# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AYMAN SALEH and | ) | |
| | ) | |
| LINDA SALEH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRESIDENT KHALIFA BIN ZAYED | ) | No. 1:20-cv-01168-ABJ |
| AL NAHYAN, | ) | |
| Crown Prince Court | ) | |
| Bainunah Street | ) | |
| P.O. Box: 124, Abu Dhabi, United Arab Emirates, | ) | |
| | ) | |
| | ) | |
| CROWN PRINCE SHEIKH MOHAMMED | ) | |
| BIN ZAYED AL NAHYAN,* | ) | |
| Crown Prince Court | ) | |
| Bainunah Street | ) | |
| P.O. Box: 124, Abu Dhabi, United Arab Emirates, | ) | |
| | ) | |
| | ) | |
| THE UNITED ARAB EMIRATES, and | ) | |
| | ) | |
| | ) | |
| DARKMATTER, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS PRESIDENT KHALIFA BIN ZAYED AL NAHYAN AND CROWN PRINCE MOHAMMED BIN ZAYED AL NAHYAN'S OPPOSITION TO PLAINTIFFS' MOTION FOR MISCELLANEOUS RELIEF REGARDING SERVICE**

---

\* Defendant H.H. Sheikh Mohamed Bin Zayed Al Nahyan has corrected the misspelling of his name as "Mohammed" in the caption of Plaintiffs' complaint.

Almost a year ago, Plaintiffs Ayman Saleh and Linda Saleh sought permission to effectuate service by alternative means on H.H. Sheikh Khalifa Bin Zayed Al Nahyan, the President of the United Arab Emirates ("UAE") and Supreme Commander of the UAE Armed Forces, and H.H. Sheikh Mohammed Bin Zayed Al Nahyan, the Crown Prince of Abu Dhabi, Deputy Supreme Commander of the UAE Armed Forces, and (according to the Complaint itself) the "de facto ruler of the UAE."  ECF No. 1, ¶¶ 8-9; *see* ECF No. 3.  This Court permitted alternative service, but instructed that "Plaintiff[s] must utilize all of the proposed methods contained in [their] request," Minute Order of July 30, 2020—namely, service (i) on the UAE Ambassador in Washington, D.C.; (ii) by international certified mail at H.H. Sheikh Khalifa and H.H. Sheikh Mohamed's purported office in Abu Dhabi; and (iii) by certified mail on the UAE Ambassador at the UAE Embassy in Washington, D.C., ECF No. 3.  Plaintiffs have not yet completed service, and in the meantime the Court has issued two Orders to show cause why this case should not be dismissed for want of prosecution, ECF Nos. 15, 22, as well as two additional Orders instructing Plaintiffs to clarify the basis for seeking particular alternative means of service, Minute Order (Jan. 4, 2021); Minute Order (Apr. 28, 2021).

Responding to the Court's latest Order, Plaintiffs now ask this Court simply to declare that service is complete or must be accepted.  ECF No. 24 ("Motion").  But that request—like Plaintiffs' charged assertion that head-of-state-ranking officials like H.H. Sheikh Khalifa and H.H. Sheikh Mohamed have evaded service by (understandably) declining to be served outside of diplomatic channels—lacks any basis and should be denied.[1]

---

[1] For the avoidance of doubt, H.H. Sheikh Khalifa and H.H. Sheikh Mohamed file this Opposition for the limited purpose of contesting Plaintiffs' Motion, and reserve the right to seek dismissal of the Complaint (including on grounds referenced in this Opposition, among others) if necessary.

"It is well established *** that 'before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant.'" *Freedom Watch, Inc. v. Organization of the Petroleum Exporting Countries*, 766 F.3d 74, 81 (D.C. Cir. 2014) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). "Rather, 'the procedural requirement of service of summons must be satisfied[.]'" *Id.* (quoting *Omni Capital*, 484 U.S. at 104). That is true even where a party has "gained actual notice of [an] action," including through "participation in the litigation." *Id.* As the D.C. Circuit stressed in discussing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), "[a]lthough notice is [a]n elementary and fundamental requirement of due process, it cannot by itself validate an otherwise defective service." *Freedom Watch*, 766 F.3d at 81 (second alteration in original) (citations and internal quotation marks omitted).

Adhering to service strictures is especially important in this case. Plaintiffs' request for relief does not concern just any defendant, but rather (i) the "president of the United Arab Emirates and the Supreme Commander of the United Arab Emirates Armed Forces," and (ii) the "Crown Prince of the Emirate of Abu Dhabi and the Deputy Supreme Commander of the United Arab Emirates Armed Forces" who (according to the characterization in Plaintiffs' own Complaint) is "the de facto ruler of the UAE." ECF No. 1, ¶¶ 8-9.

Service on foreign officials cannot be divorced from sovereignty and international comity concerns. In the context of the Hague Service Convention, for example, the U.S. government has indicated that foreign plaintiffs must use different modalities to effect "service on private individuals" and "service on the United States Government itself, which includes its officials."

Notification Pursuant to Article 31 of the Convention (Jan. 28, 2020).[2]  Whereas service on the former can be performed via a private contractor, service on the latter cannot; service on U.S. officials requires direct involvement of the Department of Justice's Office of International Judicial Assistance.  Even where a treaty between nations is not in place, "service on the U.S. Government is only proper when transmitted through diplomatic channels."  U.S. Dep't of Justice, Service of Judicial Documents on the United States Government Pursuant to the Hague Service Convention 2 (Jan. 12, 2018).[3]  Those diplomatic concerns are most pressing when it comes to high-ranking foreign officials like H.H. Sheikh Khalifa and H.H. Sheikh Mohamed, for "service of process on a head of state" implicates "the effective conduct of this nation's foreign affairs."  *Ye v. Zemin*, 383 F.3d 620, 628 (7th Cir. 2004).

Placed in that critical and sensitive context, Plaintiffs' effort to paint H.H. Sheikh Khalifa and H.H. Sheikh Mohamed as having evaded service by refusing receipt of an international mailing is wholly inappropriate.  This case is nothing like the situations at issue in Plaintiffs' cited decisions (Mot. 4-6), involving service on ordinary defendants in the United States or on "foreign business entities" abroad.  The proper analogy would be a foreign plaintiff serving the President of the United States by sending a certified letter to the White House—something that the United States has expressly rejected.

Notably, Plaintiffs' proposed two alternative methods of service concerning the UAE Ambassador raise the same sovereignty and international comity concerns, and are barred under the Vienna Convention on Diplomatic Relations and D.C. Circuit precedent as a result.  The United States has agreed that "[t]he person of a diplomatic agent shall be inviolable.  He shall not be liable

---

[2] https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=428&disp=resdn.

[3] https://www.justice.gov/civil/page/file/1036571/download.

to any form of arrest or detention. The receiving State shall treat him with due respect and shall take all appropriate steps to prevent any attack on his person, freedom or dignity."  Vienna Convention on Diplomatic Relations art. 29, Apr. 18, 1961, 23 U.S.T. 3227.[4]  As the United States has warned, "[t]he maintenance of friendly foreign relations between the United States and the sending state concerned would certainly be prejudiced by service of process on an ambassador against his will," for "[t]he sending state might well protest *** that the United States had failed to protect the person and dignity of its official representative," and "[o]ther governments might interpret the incident as meaning that the Government of the United States had decided, as a matter of policy, to depart from what they had considered a universally accepted rule of international law and practice."  *Hellenic Lines, Ltd. v. Moore*, 345 F.2d 978, 980 & n.5 (D.C. Cir. 1965). Accordingly, "the purposes of diplomatic immunity" dictate that an "Ambassador is not subject to service of process."  *Id.* at 981.

At bottom, Plaintiffs fail to demonstrate the validity of either their originally requested methods of alternative service or their more recent request to be relieved of any further service obligations.  *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (emphasizing that plaintiff bears burden of demonstrating propriety of service).  And their effort (Mot. 4) to downplay H.H. Sheikh Mohamed's status for Foreign Sovereign Immunity Act purposes is not only irrelevant to the Motion, but also is belied by the Complaint's allegation that H.H. Sheikh Mohamed is the "de facto ruler of the UAE" because of "the poor health of Defendant President Khalifa bin Zayed Al Nahyan," ECF No. 1, ¶ 9; *see* KENNETH KATZMAN, CONG. RSCH. SERV., RS21852, THE UNITED ARAB EMIRATES (UAE):  ISSUES FOR U.S. POLICY 1-2 (2020) (noting "Shaykh Khalifa's stroke in

---

[4] The Vienna Convention entered into force with respect to the United States on December 13, 1972, and is thus binding law in the United States.  22 U.S.C. § 254a.

January 2014"),[5] and is otherwise inconsistent with Supreme Court precedent, *see Samantar v. Yousuf*, 560 U.S. 305, 325 (2010) (cautioning "that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest").

Plaintiffs' discussion of personal jurisdiction cannot cure deficient service.  No longer relying on the D.C. long-arm statute cited in their Complaint, ECF No. 1, ¶ 5, Plaintiffs contend for the first time that this Court has personal jurisdictional over H.H. Sheikh Khalifa and H.H. Sheikh Mohamed under Rule 4(k)(2).  But Rule 4(k)(2) is not a basis for authorizing alternative means of service.  Mot. 3-4.  Rather, as Plaintiffs admit, Rule 4(k)(2) is operative only "where a summons has been served."  Mot. 3-4; *see* FED. R. CIV. P. 4(k)(2) (providing that, "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if" certain conditions are met).  Plaintiffs thus get the analysis backward in suggesting that this Court's exercise of personal jurisdiction over H.H. Sheikh Khalifa and H.H. Sheikh Mohamed would satisfy the distinct service requirement.  *See Freedom Watch*, 766 F.3d at 81.  In any event, Rule 4(k)(2) applies only to "a claim arising under federal law" and only where a defendant "is not subject to the jurisdiction of the courts of general jurisdiction of any state" (meaning there is no jurisdiction over Plaintiffs' state-law causes of action, which the Motion entirely ignores).  *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 87-88, 90 (D.D.C. 2006).[6]

---

[5] https://crsreports.congress.gov/product/pdf/RS/RS21852/129.

[6] Plaintiffs' assertion of personal jurisdiction fails regardless because their claims (ECF No. 1, ¶¶ 15, 20) are based on allegations of tortious conduct abroad with "no connection with the District of Columbia or with the United States," *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002), against a non-United States citizen, *see Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 228-229 (D.D.C. 2018) ("If torture committed abroad against *American* citizens is insufficient to establish personal jurisdiction without some further connection

\*       \*       \*

Accordingly, this Court should deny Plaintiffs' request for miscellaneous relief regarding service on H.H. Sheikh Khalifa and H.H. Sheikh Mohamed.

Respectfully submitted,

/s/ Z.W. Julius Chen
Z.W. Julius Chen (D.C. Bar No. 1002635)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4475
Fax: (202) 887-4288
chenj@akingump.com

*Counsel for Defendants President Khalifa Bin Zayed Al Nahyan and*
*Crown Prince Mohamed Bin Zayed Al Nahyan*

May 19, 2021

---

to the United States, then torture committed abroad against *foreign* citizens can hardly establish personal jurisdiction without some further connection[.]"), *aff'd sub nom. Doe v. Buratai*, 792 F. App'x 6, 9 (D.C. Cir. 2019) (rejecting "'theory of universal jurisdiction' for crimes against humanity" for same reason).