## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYMAN SALEH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 20-1168 (ABJ) |
| ) | |
| KHALIFA BIN ) | |
| ZAYED AL NAHYAN ) | |
| *President*, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Ayman Saleh and Linda Saleh brought this action on May 5, 2020, for claims arising from the October 2015 alleged kidnapping and assault of Ayman in Abu Dhabi, under the Alien Tort Claims Act, 28 U.S.C. § 1350, the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. 102–256, 106 Stat. 73, (Mar. 12, 1992), *codified* at 28 U.S.C. § 1350, "the Fourth Geneva Convention, President Lincoln's 1863 Lieber Code, the Law of Nation's clause in the U.S. Constitution, the bilateral treaty between the UAE and the U.S., and various international human rights conventions."   Compl. [Dkt. # 1] ¶ 1.   They filed this suit against four defendants: DarkMatter, the United Arab Emirates ("UAE"), the current President of the UAE, Sheikh Khalifa bin Zayed Al Nahyan ("the President"), and the Crown Prince and Deputy Supreme Commander of the UAE Armed Forces, Sheikh Mohammed bin Zayed Al Nahyan ("the Crown Prince").  *Id.* ¶¶ 8–9.  Of the eight counts in plaintiffs' complaint, defendant DarkMatter is only named in Count III, for violating the TVPA, and Count VIII, for engaging in civil conspiracy with the other defendants.  *Id.* ¶¶ 24–25, 45–50.

Pending before the Court is defendant DarkMatter's motion to dismiss.  Def.'s Mot. to Dismiss [Dkt. # 17] ("Mot."); Def.'s Mem. of Law in Support of Def.'s Mot. [Dkt. # 17] ("Mem."). Defendant has moved to dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process, and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), respectively.  *Id.*  Plaintiffs have replied, and the matter is fully briefed.[1]  *See* Pls.' Opp. to Def.'s Mot. to Dismiss [Dkt. # 20] ("Opp."); Def.'s Reply Mem. in Supp. of Mot. [Dkt. # 21] ("Reply").  Because the Court concludes that it lacks subject matter jurisdiction over defendant DarkMatter for the claim arising from the TVPA, and plaintiffs fail to state a claim for civil conspiracy against the defendant, it will grant the motion to dismiss without reaching the issues of personal jurisdiction or insufficient service of process.

## FACTUAL BACKGROUND

Plaintiffs Ayman Saleh and Linda Saleh are married and domiciled in Portland, Oregon. Compl. ¶ 2.  Linda is a United States citizen, and Ayman is a dual citizen of the United States and the United Arab Emirates.  *Id.* ¶¶ 6–7.  Plaintiffs allege the following facts in their complaint.

On October 14, 2015, Ayman was walking to the grocery store in Abu Dhabi when he was approached by state security agents.  Compl. ¶ 15.  The agents claimed they needed to ask Ayman a few questions.  *Id.*  Ayman went with the agents "because he feared that a long interrogation would ensue if he did not do so."  *Id.* ¶ 16.  The agents escorted Ayman to a police station where

---

1       On June 16, 2021, the Court received notice that plaintiffs' original counsel had passed away on June 6, 2021.  *See* Notice [Dkt. # 28].  On September 8, 2021, plaintiffs' new counsel entered an appearance.  *See* Notice [Dkt. # 32].  Since plaintiffs were represented by counsel at the time of the filing of the motion to dismiss, they filed an opposition, and they are currently represented, the Court will consider the fully-briefed motion.

they locked him in an office and tortured him. *Id.* Ayman was strangled, kicked in the head, "smacked across the face, dragged across the floor, repeatedly whipped with electrical wire, and threatened with a gun to his head." *Id.* ¶ 17.

During the assault, Ayman was repeatedly questioned about his religion. Compl. ¶ 18. Ayman told the agents he was Muslim, which upset the agents and did not halt his brutalization. *Id.* Upon Ayman's repeated insistence that he was Muslim, the agents "pulled out a cell phone with [Ayman's] baptism certificate from 2013 (for converting to Christianity) and placed it on the table in front of [him]." *Id.* Ayman contends that at that moment, he believed was being tortured because he had converted from Islam to Christianity, *id.* ¶¶ 18, 21, and because the UAE government "prescribes punishment, including the death penalty, for the possession of material that opposes Islam." *Id.* ¶ 9. Converting from Islam to Christianity, according to plaintiffs, "is something that you d[o] not do in the UAE." *Id.* ¶ 33.

Plaintiffs allege that the Crown Prince and the President hired the security company that employed the agents who detained and tortured Ayman Saleh, Compl. ¶ 40, and that the UAE retained defendant DarkMatter to engage in the "offensive mass surveillance" of its citizens that resulted in these events. *Id.* ¶¶ 46–50; *see also id.* ¶ 11 ("DarkMatter is likely responsible for tracking the movement of Plaintiff Ayman Saleh, which led to his brutal attack."). According to the complaint, DarkMatter is a cybersecurity company founded in the UAE in 2014 that hires top-level talent from the world's tech giants and recruits skilled hackers and staff. *Id.* ¶¶ 46–47. Plaintiffs claim that the UAE "has adopted a policy of close surveillance of its citizens in the guise of national security" and that DarkMatter "partners with the UAE government to conduct offensive mass surveillance of its citizens, including digital espionage services." *Id.* ¶ 46. Plaintiffs allege that DarkMatter partners with the UAE government to hack hardware probes installed in major

3

cities, take advantages of weaknesses in the software, and install malware to locate and hack UAE-based individuals. *Id.* Plaintiffs believe that Ayman was a victim of these cybersecurity tactics when he was targeted by the security agents and allege that DarkMatter and the Crown Prince conspired to "prevent religious conversions and inflict severe pain on all UAE citizens who renounced the Islamic faith," including Ayman Saleh. *Id.* ¶¶ 49–50.[2]

## PROCEDURAL HISTORY

Plaintiffs filed this action on May 5, 2020. *See* Compl. Plaintiffs struggled to serve defendants, and on June 24, 2020, filed their first motion for alternative methods of service, seeking permission to effectuate service by alternative means on DarkMatter. Pls.' Req. for Service by Alternative Methods [Dkt. # 3] ("Req."). On July 30, 2020, the Court granted the motion and ordered that "[p]laintiff[s] . . . utilize all of the proposed methods contained in [their] request." Min. Order (July 30, 2020). On October 19, 2020, plaintiffs successfully served defendant DarkMatter. *See* Return of Service [Dkt. # 11]; *see also* Pls.' Status Report for Service of Process [Dkt. # 14] ¶¶ 2–4.

On December 18, 2020, defendant DarkMatter filed a motion to dismiss the claims against it on multiple grounds: lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); lack of personal jurisdiction over defendant DarkMatter pursuant to Federal Rule of Civil Procedure 12(b)(2); insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5); and for failure to state a claim upon which relief may be granted pursuant to

---

2     Paragraph 50 also asserts, "[i]f it were not for the conduct engaged in by the Crown Prince, DarkMatter, and UAE officials, Plaintiff Saleh would not have been kidnapped and savagely beaten up by DarkMatter contractors and/or state sponsored security agents." Compl. ¶ 50. But this is the only suggestion in the complaint that the attackers were retained by DarkMatter as opposed to the UAE.

Federal Rule of Civil Procedure 12(b)(6).  Mot. at 1.  Plaintiffs oppose the motion, request an award of jurisdictional discovery, and maintain that the Court has personal jurisdiction under the District's long-arm statutes.  *See* Opp. ¶¶ 17, 21, citing D.C. Code §§ 13–422 & 13–423 (2001).

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying the Rule 12(b)(6) principle to a Rule 12(b)(1) motion).  But the Court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *see also Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

## I.   Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter

jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, the court "is not limited to the allegations of the complaint."  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.    Lack of Personal Jurisdiction

It is the plaintiff who bears the burden of establishing personal jurisdiction over each defendant.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  In order to survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must make a prima facie showing of the pertinent jurisdictional facts."  *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  To establish that personal jurisdiction exists, the plaintiff must allege specific acts connecting the defendant with the forum.  *See In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).   Plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction.  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction[.]"  *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). However, "the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, [the plaintiff] may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as she can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010), quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (alteration in original).  Any factual discrepancies should be resolved in favor of the plaintiff.  *See Crane*, 894 F.2d at 455–56.

But the Court need not treat all of a plaintiff's jurisdictional allegations as true.  *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  "Instead, the court 'may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.'"  *In re Papst Licensing*, 590 F. Supp. 2d at 98, quoting *D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008).

### III.   Insufficient Service of Process

A plaintiff bears the burden to establish that it has properly effectuated service.  *See Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) ("[T]he party on whose behalf service is made has the burden of establishing its validity when challenged.").  When sufficiency of service is challenged, a plaintiff must demonstrate "that the procedure employed to deliver the papers satisfies the requirements of the relevant portions of Rule 4."  *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012), quoting Wright, Federal Practice and Procedure § 1803 (3d ed. 2002 & Supp. 2012).

Federal courts lack the power to assert personal jurisdiction over a defendant unless the procedural requirements of service of process are satisfied.  *See Omni Cap. Int'l, Ltd. v. Rudolf*

*Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002). "Service is therefore not only a means of 'notifying a defendant of the commencement of an action against him,' but 'a ritual that marks the court's assertion of jurisdiction over the lawsuit.'" *Mann*, 681 F.3d at 372, quoting *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992).

If a plaintiff does not meet this burden, the Court may dismiss the complaint without prejudice for ineffective service of process. *See* Fed. R. Civ. P. 12(b)(5); *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 368–69 (D.C. Cir. 1997) (recognizing that the district court had the authority to dismiss certain claims without prejudice due to insufficiency of service of process).

## IV.    Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." 556 U.S. at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action,"

*Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Browning*, 292 F.3d at 242. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I.    Subject matter jurisdiction under Rule 12(b)(1)

Defendant's motion cites Federal Rule of Civil Procedure 12(b)(1), but its memorandum does not address that issue directly or take the position that the Court lacks subject matter jurisdiction to consider the complaint as a whole. The basis for defendant DarkMatter's jurisdictional argument is that the only federal claim brought against it is Count III, under the TVPA, and that statute only authorizes suits against individuals, not entities. Mem. at 20–21; *see* 28 U.S.C. § 1350, note § 2(a) (limiting liability to an "individual"); *see also Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1404 (2017) ("The key feature of the TVPA . . . is that it limited

liability to 'individuals,' which, the Court has held, unambiguously limits liability to natural persons."), citing *Mohamed v. Palestinian Auth.*, 566 U.S. 449, 453–56 (2012) (holding that the "individual" liability under the TVPA does not encompass corporations or other organizations).

Plaintiffs do not respond to this contention in their opposition, and so under the Local Rules of this court this claim is deemed to be conceded. *See* Local Civil Rule 7(b) ("Within 14 days of the date of service [of a party's motion] or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.").[3]

Since the Court must dismiss Count III on that basis against defendant DarkMatter, the only claim left against DarkMatter is the state law claim for civil conspiracy, Count VIII. *See* Compl. ¶¶ 45–50. Defendant contends that the Court should decline to exercise jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). *See* Mem. at 22–23. Plaintiffs' only response is half-hearted and insufficient:

> As this Court knows, 28 U.S.C. 1367 affords Plaintiffs the right to claim supplemental jurisdiction under certain circumstances. Plaintiffs believe that those circumstances are present here. Whether or not the Defendants' argument has merit is going to be determined by this Court with respect to whether or not the case can go forward.

Opp. ¶ 30.

---

[3]     *But see Wash. Alliance of Tech. Workers v. United States*, 892 F.3d 332, 344–45 (D.C. Cir. 2018) (finding that district court abused its discretion in dismissing a complaint under Local Rule 7(b) when the plaintiff timely filed an opposition and "rest[ed] on its complaint in the face of a motion to dismiss"); *Coulston v. Wash. Metro Area Transit Auth.*, Civ. Action No. 19-2060 (TJK), 2020 WL 1236563, at *5 n.2 ("[T]he D.C. Circuit recently cast doubt on whether failing to oppose an argument is, alone, enough to warrant dismissal. *Wash. Alliance*, 892 F.3d at 345. Because the Court agrees with Defendants, it need not decide whether Plaintiffs' failure to respond is dispositive.").

But dismissal under section 1367(c)(3) is discretionary, not mandatory, *see, e.g.*, *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 346 (D.C. Cir. 1997) ("When the District Court has dismissed claims properly before it, it retains discretion to decide whether or not to dismiss other claims as to which it may exercise supplemental jurisdiction."), and Count VIII alleges a conspiracy with other defendants that have not yet moved to dismiss the federal claims that supply jurisdiction.  *Id.*, citing 28 U.S.C. § 1367(c)(3) ("[The Court] may decline to exercise supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'"); *see also Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed.").  Therefore, the Court finds it appropriate to address the defendant's contention that the case should be dismissed under another provision of Rule 12.

## II.      Failure to state a claim under Rule 12(b)(6)

Like all of the other counts, the civil conspiracy claim arises out of the brutal assault allegedly suffered by plaintiff Ayman Saleh at the hands of UAE security forces in October 2015. Putting aside the highly conclusory nature of the limited allegations of defendant DarkMatter's role or involvement,[4] the complaint is devoid of any allegations of overt acts in furtherance of the alleged conspiracy since then.  Therefore, the claim against defendant DarkMatter – assuming one was stated in the first place – is barred by the statute of limitations.

---

4      *See, e.g.*, Compl. ¶¶ 49–50 ("It is, therefore, probable that Plaintiff Saleh was a victim of these offensive cybersecurity tactics when he was tracked down, taken off the streets and brutally beaten by security agents hired by the UAE government. . . .  The company and the Crown Prince have therefore conspired, in Plaintiff Saleh's case, to prevent religious conversions and inflict severe pain on all UAE citizens who renounced the Islamic faith.  If it were not for the conduct engaged in by the Crown Prince, DarkMatter, and UAE officials, Plaintiff Saleh would not have been kidnapped and savagely beaten up by DarkMatter contractors and/or state sponsored security agents.").

Civil conspiracy is a state-law claim, and so this Court must apply the District of Columbia's choice-of-law rules. *See Dubois v. Wash. Mut. Bank*, Civ. Action No. 092176 (RJL), 2010 WL 3463368, at *10 (D.D.C. Sept. 2, 2010), quoting *A.I. Trade Fin. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995) ("When exercising supplemental jurisdiction, the Court 'applies the forum state's choice of law rules and the state statute of limitation indicated thereby.'"). For a civil conspiracy claim under D.C. law, the applicable limitations period is determined by the underlying tort. *See Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009) ("[A] civil conspiracy claim incorporates not only every substantive element of the underlying tort, but also its statute of limitations."). However, plaintiffs fail to allege any specific underlying tort in their complaint. *See Inova Health Care Servs. v. Omni Shoreham Corp.*, Civ. Action No. 20784 (JDB), 2020 WL 4201661, at *24 (D.D.C. July 22, 2020) (collecting cases where judges in this district have "permitted civil conspiracy claims to proceed against parties that had no underlying tort asserted against them").

To the extent that plaintiffs' claim for civil conspiracy relies on the alleged kidnapping and torture of one of the plaintiffs, the underlying tort could be false arrest, assault, battery, or false imprisonment. The statute of limitations for any of these torts under D.C. law is one year. *See* D.C. Code § 12-301(a)(4) (stating that "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment," the applicable statute of limitations is "1 year."). If plaintiffs allege an underlying tort not included in this list, the maximum statute of limitations is three years. *See* D.C. Code § 12-301(a)(8) (stating that for a tort "for which a limitation is not otherwise specially prescribed," the applicable statute of limitations is "3 years").

The statute of limitations begins to run "from the time the right to maintain the action accrues," D.C. Code § 12-301(a), which would be in October 2015. *See* Compl. ¶ 15. Under either

12

the one-year or three-year limitations period, then, plaintiffs' civil conspiracy claim is time-barred because it accrued more than four and a half years before the filing of the instant lawsuit on May 5, 2020.

Therefore, Count VIII for civil conspiracy will be dismissed against defendant DarkMatter for failure to state a claim upon which relief can be granted. *See Bryne v. Clinton*, 410 F. Supp. 3d 109, 121 (D.D.C. 2019) ("It has long been established in this circuit . . . that a statute of limitations defense that is clear on the face of the complaint is properly brought under Rule 12(b)(6).") (collecting cases).

## CONCLUSION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court will grant defendant DarkMatter's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.[5]   A separate order will issue.

_____
AMY BERMAN JACKSON
United States District Judge

DATE:  September 22, 2021

---

5      Defendant raised other procedural and substantive challenges to the lawsuit, but because the claims against DarkMatter will be dismissed on other grounds, the Court need not reach the merits of the motion to dismiss for insufficient service of process or lack of personal jurisdiction, and this renders plaintiffs' request for jurisdictional discovery moot.