UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYMAN SALEH, *et al.*, : <br> : <br> Plaintiffs, : <br> v. : <br> : <br> KHALIFA BIN ZAYED AL NAHYAN, : <br> *et al.*, : <br> : <br> Defendants. : <br> : | Civil Action No. 20-1168 (ABJ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

NOW COMES Plaintiffs, Ayman Saleh and Linda Saleh, by and through undersigned counsel, and respectfully submit this Memorandum in Opposition to Defendants' Motion to Dismiss.

**INTRODUCTION AND BACKGROUND**

On October 14, 2015, United Arab Emirates ("UAE") sponsored security agents approached Ayman Saleh on the street in Abu Dhabi. Compl. ¶ 15. The agents claimed they needed to ask Mr. Saleh a few questions. *Id.* When Ayman tried to inquire about this interrogation, he received no answers. *Id.* Mr. Saleh obliged out of fear and got in the vehicle with the agents. *Id.* ¶ 16. The agents escorted Mr. Saleh to a local police station where they locked him in an office and savagely tortured him until the next day. *Id.* These security agents strangled Mr. Saleh, dragged him across the floor, repeatedly whipped him with electrical wire, and threatened him with a gun to his head. *Id.* ¶ 17. The security agents kicked Mr. Saleh in the head and used their boots to strangle him. *Id.*

During the inhumane torture and assault, the security agents repeatedly questioned Mr. Saleh about his religion. Compl. ¶ 18. Mr. Saleh told the agents he was Muslim, which angered

the agents more and they continued to brutalize him.  *Id.*  Upon Mr. Saleh's repeated insistence that he was Muslim, the agents pulled out a cell phone with Ayman's baptism certificate from 2013, when he converted to Christianity, and placed it on the table in front of him.  *Id.*  At that moment, Mr. Saleh knew why he was being tortured.  The security agents took these actions at the direction and protection of Defendants.

The UAE constitution designates the official religion to be Islam.[1]  Defendants' motion points out that Christians are the second largest religion in the UAE.  While UAE might purport to be tolerant of other religions, conversion of Muslims to other religions is expressly not tolerated and the laws on blasphemy punish behavior viewed as contemptuous of the Quran and offensive to Islamic teachings.[2]  A 2009 State Department report highlighted that conversion from Islam to another religion is not recognized and converts may be persuaded to return to the Islamic fold, may conceal their new faith, or may travel to another country where their conversion is recognized.  The report goes on to identify that people leaving for another country might do so to avoid the social stigma of converting from Islam.[3]

At this time of this brutal attack, Mr. Saleh was still a citizen of the UAE, but he was living in the United States and he was married to a United States' citizen.  Compl. ¶¶ 6-7.  While Mr. Saleh was clinging to life in this UAE police department, his wife and newborn child were blocks away, anxiously waiting for his return to their hotel room.  Compl. ¶¶ 35-36.  Though the agents knew that Mr. Saleh was living in the United States at the time and that he had converted

---

[1] https://www.state.gov/reports/2020-report-on-international-religious-freedom/united-arab-emirates/
[2] *Id*.
[3] https://web.archive.org/web/20091031224349/http://www.state.gov/g/drl/rls/irf/2009/127360.htm

to Christianity, they released him to return to his family upon learning that his wife was a United States' citizen, and that she was in a nearby hotel waiting for his return.

## ARGUMENT

**I.  This Court has personal jurisdiction over Defendants because Defendants have sufficient contact with the forum state through its Embassy based in Washington D.C.**

In order to survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must make *prima facie* showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  In establishing *prima facie* showing of personal jurisdiction, plaintiff is entitled to having the complaint and any doubts resolved in the light most favorable to him.  *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998).

A plaintiff seeking to establish specific jurisdiction over a non-resident defendant must demonstrate that specific jurisdiction comports with the forum's long arm statute and does not violate due process.  Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919, (2011).

**A.  The District of Columbia Long-Arm Statute Provides Personal Jurisdiction.**

The District of Columbia's long arm statute provides, in pertinent part, that a "District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to claim for relief arising from the person's … (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia …."

D.C. Code § 13-423(a)(4).  The District's long arm statute is coextensive with the constitutional requirements for personal jurisdiction, *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987), and requires that "non-resident defendants have certain minimum contacts with the forum state, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).

Four factors affect whether "minimum contacts" exist: (1) the extent to which the defendants availed themselves of the privileges of American law; (2) the extent to which litigation in the United States would be foreseeable to them; (3) the inconvenience to defendants in litigating in the United States; and (4) the countervailing interests of the United States in hearing the suit.  *TIFA, Ltd.*, 1991 WL 179098, at *8; *see Gilson v. Republic of Ireland*, 682 F.2d 1022 (D.C. Cir. 1982).  In "assessing personal jurisdiction under either a constitutional due process standard or a statutory standard, courts may look to the contacts between the forum and agents of the defendant." *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1105 (D.C.Cir.1982); *see also Texas Trading and Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 314-15 (2d Cir.1981).

All four factors are met here.  Defendants availed themselves to the laws of this jurisdiction through their embassy located squarely in Washington D.C., and it should be foreseeable to anticipate litigation in a forum where you conduct business regularly.  The embassy is the representative for UAE in the United States.  The website for the D.C. embassy boasts of several forms of contact within D.C., including, but not limited to, trade and business relations in the District of Columbia.[4]

---

[4] https://www.uae-embassy.org/uae-us-relations

Additionally, UAE has called on a D.C. Public Relations firm, The Harbour Group[5], to "understand how it is viewed by influencers in Washington D.C.  This initiative was led by the Washington D.C. embassy on behalf of UAE.  The UAE also has contacts with the forum state in the form of a U.S.-U.A.E. Business Council whose mission it is to "provide its membership unparalleled access to senior decision makers in business and government in the U.A.E. and in the U.S."[6]  Courts have held that such "financial and operational contacts with the United States" support personal jurisdiction even when attacks occur abroad.  *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 90 (D.D.C. 2006) (jurisdiction based on U.S.-based "recruitment, propaganda, [and] public relations.").

Finally, the United States has significant interest in hearing this suit. The acts alleged in Plaintiffs' complaint are not one-of-a-kind nor unique to this jurisdiction.  The United States has adopted several laws such as the Torture Victim Protection Act ("TVPA") and Alien Tort Statute ("ATS") to provide for lawsuits claiming human rights violations arising from actions abroad.  Both the TVPA and ATS are aimed at ensuring accountability for laws that go against the international norm in a legitimate forum such as United States.  The TVPA specifically was adopted to create civil causes of action in the United States even for torture committed abroad. *See* S. Rep. No. 102-249, at 3 (1991); *see also* H.R. Rep. No. 102-367(I), at 3 (1991).  Litigating this matter in the UAE would cause Plaintiff grave concern for his own safety as well as that of his family members, both in UAE and here in the United States.

---

[5] https://www.provokemedia.com/latest/article/uae-tasks-pr-firms-with-reputation-review-among-dc-influencers
[6] https://usuaebusiness.org/about/

5

4870-8215-3732, v. 1

B.   **Exercising Personal Jurisdiction Over the Head-Of-State Defendants would not be inconsistent with Due Process.**

Rule 4(k)(2) provides jurisdiction where (1) a claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state, (3) service is proper, and (4) jurisdiction accords with due process, measured by contacts with the United States as a whole. *Mwani v. Bin Laden*, 417 F.3d 1, 10 (D.C. Cir 2005). Plaintiff only needs to make prima facie showing that due process permits jurisdiction in the present case. As discussed above, due process permits personal jurisdiction as long as defendants have sufficient forum contacts and the suit "does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Montana Eighth Jud. Dist. Cr.*, 141 S.Ct. 1017, 1024 (2021), quoting *Int'l Shoe Co. Wash. Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 316-17 (1945).

This Court has personal jurisdiction over Head-Of-State Defendants. Mr. Saleh was targeted for his activities that occurred in the United States. His torturers repeatedly showed Mr. Saleh his certificate of Baptism. It was the sole reason for the torture Mr. Saleh endured. The free exercise of his constitutional freedom here led to his torture in the UAE. And it was his relations with the United States (the fact that his wife was a U.S. citizen) that ultimately led to his release.

*Mwani* clarifies that jurisdiction is proper if a foreign defendant "engage[s] in unabashedly malignant actions directed at [and] felt in this country," "regardless of the plaintiff['s] nationality." 417 F.3d at 4. *Mwani* is a lawsuit by Kenyans who were injured in a bombing by Al Qaeda in Kenya. *Id.* They sued Al Qaeda and Osama Bin Laden for carrying out the attacks. *Id.* Initially, the district court dismissed the case because the attack occurred abroad, plaintiffs were not U.S. citizens or residents, and the defendants lacked "physical contacts with the forum." *Id.* at 12. The D.C. Circuit reversed the ruling and found that jurisdiction "may not

6

be avoided merely because the defendant did not physically enter the forum." *Id*. *Mwani* turned on the defendant's targeting of U.S. interests, not on physical contacts with the U.S. Soil. *Id*. at 12.

The Defendants here targeted Mr. Saleh due to his religious identity which is directly in contravention to the rules of the UAE, of which he was a citizen at the time. Contrary to the much-touted claim in Defendants' brief that Christianity is the second largest religion in the UAE, the UAE does not permit its citizens to be of any other faith aside from Islam.[7] And while conversions to Islam are encouraged, conversions from Islam are not allowed nor recognized.[8] Mr. Saleh's conversion to Christianity, which he did when he was a resident of the United States, was the sole reason for his torture.

In no event should the Court dismiss without jurisdictional discovery. In the D.C. Circuit, the standard is "quite liberal." *Ofisi*, 2019 WL 1255096, at *8. A plaintiff is entitled to discovery as long as he establishes its "likely utility" to allow him to "supplement [his] jurisdictional allegations." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 48-49 (D.C. Cir. 2020); *see Ofisi*, 2019 WL 1255096, at *8 (discovery permitted to extent to which defendant "acted in concert with, or at the direction of, al Qaeda to facilitate, plan, or execute the attacks"). Plaintiffs have already demonstrated plausible factual support that discovery will uncover "sufficient evidence" of jurisdiction. *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 18 (D.D.C. 2014). At a minimum, the Court should permit jurisdictional discovery.

---

[7] https://2001-2009.state.gov/g/drl/rls/irf/2008/108495.htm
[8] https://2001-2009.state.gov/g/drl/rls/irf/2008/108495.htm

II.   **The President and Crown Prince are not immune from suit.**

    A.   **FSIA does not require dismissal and the UAE is not the only real party-in-interest.**

Plaintiffs' claims are not barred by Foreign Sovereign Immunities Act ("FSIA") and do not require dismissal because the UAE is not the only real party-in-interest. FSIA only applies to foreign states and not to individual officials. Plaintiffs have sued both the state and individuals involved with his torture. FSIA does not bar a suit against the individual defendants nor the state.

    B.   **Common-law Foreign Sovereign Immunity does not bar this suit.**

        a.   **The Head-Of-State Defendants are not protected by status-based immunity.**

Defendant President Khalifa bin Zayed Al Nahyan cannot assert status-based immunity due to the FSIA. If the State Department grants a foreign sovereign's request for immunity, the district court surrenders its jurisdictions. However, absent any such recognition, the district court has discretion to decide for itself whether defendant has met the prerequisites for immunity. *Samantar v. Yousef*, 130 S. Ct., 2278, 2284-85, n.6 (2010). No such requests have been made.

Defendant Sheikh Mohammed bin Zayed Al Nahyan cannot assert status-based immunity because he is not a head of state and instead is merely a crown prince. Status-based immunity is a powerful tool and applies "regardless of the substance of the claim." *Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019). For this reason, it is narrowly construed.

Sheikh Zayed al Nahyan is not a head of state, does not have immunity from the State Department, nor is he a head of any government, or minister. In fact, when faced with the same argument, a court in California specifically declined to suggest immunity for Sheikh Mohamed

8

Bin Zayed Al Nahyan in a similar case. *Hassen v. Nahyan*, No. 2:09-cv-1106 (C.D. Cal. July 26, 2010), ECF No. 51.

      **b.**    **The Head-Of-State Defendants are not protected by conduct-based immunity.**

Defendants are not entitled to immunity based on their conduct. The D.C. Circuit Court has held that the TVPA overrides official-act or conduct-based immunity. *Lewis*, 918 F.3d at 147. Further Defendants cannot claim conduct-based immunity without admitting to the conduct and then admitting that it was carried out in their official capacity—Defendants' claim neither in their motion.

There are two tests to determine if immunity applies. The first test is the Restatement test, which says that immunity applies if (1) "the actor is a public minister, official, or agent."; (2) the "acts were performed in her official capacity"; and (3) exercising jurisdiction would serve to enforce a rule of law against the foreign state." *Id*. at 146. The second test is the State Department test that looks to their "established policy." *Samantar v. Yousef*, 560 U.S. 305, 312 (2010). Under both tests, however, immunity "extends only to acts that [an] individual took in an official capacity." Ltr. from Harold Hongju Koh, Legal Adviser, U.S. Dep't of State, to Stuart F. Delery, Principal Dep. Ass't Att'y Gen., Civil Div., U.S. Dep't of Justice, at 1 (Dec. 17, 2012), docketed at *Ragsdale v. Lashkar-E-Taiba*, No. 1:11-cv-3893 (E.D.N.Y. Dec. 17, 2012), ECF No. 19-1. Defendants did not act in their official capacity as Heads of States when they tortured Mr. Saleh due to his religious identity.

**III.**    **Plaintiffs' Complaint States a Claim for Which Relief Can be Granted.**

      **A.**    **The Complaint States a Claim to Relief that is Plausible on its Face.**

In evaluating a motion to dismiss under Rule 12(b)(6) the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that

can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff 'the benefit of all inferences.'"  *Hernandez v. Dist. Of Columbia*, 845 F. Supp. 2d 112, 115 (D.D.C. 2012).

Plaintiffs' Complaint sufficiently pleads a claim to relief that is plausible on its face regarding the President and Crown Prince as the Complaint alleges that security agents at the direction of the President and Crown Prince inflicted the illegal and inhumane torture on Plaintiff Ayman Saleh and the intentional infliction of emotional distress on Plaintiff Linda Saleh.  Plaintiffs' complaint clearly alleges that all parties—including the President and the Crown Prince—"knew that this [torture] was being engaged in and knew that Plaintiff Ayman Saleh had converted from the Muslim faith to the Christian faith."  *See* Compl. Count Three; *see, e.g,, Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33, 52 (D.D.C. 2011) ("general awareness of wrongdoing . . . is sufficient").

Count Four alleges that the Crown Prince had expressly promised to "protect any official that was accused of maiming and torturing and/or killing an infidel i.e. any UAE citizen converting to the Christian faith from the Muslim faith."  Compl. ¶ 33.  And Counts Five and Six further affirm that the Defendants knew of this tortious conduct and that "security company that [the security agents] were employed by was hired by the Crown Prince and the President …."  Compl. ¶ 40.

10

Count Eight further alleges that the Crown Prince has conspired to "prevent religious conversions and inflict severe pain on all UAE citizens who renounced the Islamic faith. If it were not for the conduct engaged by the Crown Prince, DarkMatter, and UAE officials, Plaintiff Saleh would not have been kidnapped and savagely beaten …." Compl. ¶ 50. These facts and allegations throughout the Complaint make clear that the Defendants have been and are part of similar practices or "modus operandi" and that the conduct against Plaintiffs confirm with those practices. *See, e.g., Shimono v. Harbor Freight Tools USA, Inc.*, No. EDCV 16-1052, 2016 WL 6238483, at *6 (C.D. Cal. Oct. 24, 2016) (allegations that defendant "had a practice" or "modus operandi" and that the conduct against the plaintiff conformed with that practice were sufficient to "state[] a plausible claim").

The Complaint and claims make clear the Crown Prince and President caused, promoted, and protected the inhumane torture and treatment of Plaintiffs and that these actions were in conformity to their general practices. While discovery will further illuminate these claims, Plaintiffs have sufficiently pled their case.

    **B.**    **Equitable Tolling Applies to the Statute of Limitations here; Plaintiffs' Claims in Counts Four, Five, and Eight are not Barred.**

The statute of limitations under the TVPA is 10 years. *See* 28 U.S.C. § 1350, historical and statutory notes, Torture Victim Protection, § 2(c). The TVPA also "explicitly calls for consideration of all equitable tolling principles in calculating this period with a view toward giving justice to plaintiffs rights." S. Rep. 102-249, 10-11; *see also Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 242 (D.D.C. 2005). Principles of equitable tolling apply in certain cases to "excuse a plaintiff's failure to comply with the strict requirements of a statute of limitations." *Harris v. Hutchinson,* 209 F.3d 325, 328 (4th Cir. 2000); *see also Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990) (recognizing that "in lawsuits between

private litigants," statutes of limitations "are customarily subject to 'equitable tolling'").

Equitable tolling is particularly appropriate where "some extraordinary circumstance stood in [the] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (internal quotation marks omitted); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007).  These equitable tolling principles are equally applicable to Plaintiffs' tort claims under state law.  *See Deutsch v. Turner Corp.*, 324 F.3d 692, 718 (9th Cir. 2003) (applying district court's reasoning regarding equitable tolling under TVPA to the state law claims).

To apply the state law statute of limitations to the civil torts in Court Four, Five, and Eight, as Defendants request, would serve to undermine the purpose of the TVPA and would reward Defendants for their egregious actions.  Plaintiffs have timely pursued their claims due to the extraordinary circumstances that stood in their way prior to their filing in this case. Defendants and their agents savagely abducted, beat, and tortured Plaintiff Ayman Saleh.  Leading to long-term terror for him and his wife.  Compl. ¶ 12.  Even upon their return to the United States—and continuing through today—Plaintiffs fear the Defendants and their reach, particularly based on their location tracking and surveillance ability.  Compl. ¶¶ 12, 46-50.

These fears are not purely fanciful speculation; rather, they are based on Plaintiffs' understanding of previous brutal acts at the hands of Defendants.  It is only due to recent developments within the UAE and its foreign relations reach—including the importance of the UAE's relationship with the United States, as evidenced by the public relations firm Defendants' have retained in District of Columbia—that Plaintiffs finally feel relatively safe enough to bring their Complaint to light.

To reward the Defendants threatening and pervasive surveillance and violence with an

12

application of the statute of limitations would be contrary to Congressional intent in the TVPA and the state law claims raised here.  Equitable tolling is appropriate based on Defendants' own actions and the extraordinary circumstances found in this case.

### C. Exhaustion in the UAE is neither Required nor Possible.

While it is debatable whether plaintiffs ever have to exhaust their remedies under the TVPA, "[v]ery few cases under TVPA appear to have been dismissed based on the failure to exhaust domestic remedies defense." *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 485 (D. Md. 2009), *aff'd in part, appeal dismissed in part sub nom, Ochoa Lizarbe v. Rivera Rondon*, 402 F. App'x 834 (4th Cir. 2010) (citation omitted).  Moreover, it is defendant's burden to prove that domestic remedies exist.  *Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 243 (D.D.C. 2005) (citations omitted).

And where local remedies are neither "adequate" nor "available," exhaustion is clearly not required under the TVPA.  *See Jane W. v. Thomas*, 354 F. Supp. 3d 630, 637 (E.D. Pa. 2018).  Similarly, exhaustion is not required where it would be futile.  *Doe v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20, 25 (D.D.C. 2005), citing *Hammontree v. NLRB*, 925 F.2d 1486, 1517 (D.C. Cir. 1991) ("exhaustion is a prudential doctrine that should be applied flexibly and not when further pursuit of remedies is futile.").  Among other risks, the "threat of violence easily meets the futility standard." *Id.* (citation omitted).

In a matter where the UAE, its leadership, and its private security firm abducted and tortured Plaintiff, it is clear that Plaintiffs suffer a risk of reprisal and violence if they pursued their claims in the UAE.  Defendants and their agents inflicted significant bodily injury on Plaintiff Ayman Saleh as reprisal for religious conversion. Compl. ¶ 12.  Plaintiffs continue to "feel threatened and exposed" despite the fact that they both live in the United States.  Compl. ¶

13

13. Seeking a local remedy in the UAE under these circumstances is neither adequate nor available, and would carry the attendant risk of violence, reprisal, and danger. Exhaustion is not required under these circumstances, and Defendants have not carried their burden to the contrary.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

Dated: December 1, 2021　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　Ayman Saleh and Linda Saleh
　　　　　　　　　　　　　　　　　　　　　　　*By Counsel*


　/s/
Samuel C. Moore
District of Columbia Bar ID: 1015060
Farheena Siddiqui
District of Columbia Bar ID: 888325080
Law Office of Samuel C. Moore, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: scmoore@scmoorelaw.com
Email: fsiddiqui@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2021, I electronically filed the foregoing Memorandum in Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Stephen M. Baldini
Akin Gump Strauss Hauer & Feld, LLP
One Bryant Park
44th Floor
New York, NY 10036-6745
212-872-1000 (phone)
212-872-1001 (fax)

Z.W. Julius Chen
Hal Shapiro
Pratik A. Shah
Akin Gump Strauss Hauer & Feld, LLP
2001 K Street, NW
Washington, D.C. 20006
202-887-4475 (phone)
202-887-4288 (fax)

/s/Samuel C. Moore
Samuel C. Moore
Law Office of Samuel C. Moore, PLLC
526 King Street, Suite 506
Alexandria, VA 22314
scmoore@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234