UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYMAN SALEH, *et al.*,                Plaintiffs, <br><br> v. <br><br> PRESIDENT KHALIFA BIN ZAYED AL NAHYAN, *et al.*,                Defendants. | Case No. 1:20-cv-01168-ABJ |

**DEFENDANTS PRESIDENT KHALIFA BIN ZAYED AL NAHYAN AND CROWN PRINCE MOHAMED BIN ZAYED AL NAHYAN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ..................................................................................2

    II.   THE PRESIDENT AND CROWN PRINCE ARE IMMUNE FROM SUIT ..........5

        A.    The FSIA Requires Dismissal Because The UAE Is The Real Party-In-Interest .......................................................................................5

        B.    The Head-of-State Defendants Are Protected By Status-Based Immunity ....................................................................................................6

        C.    The Head-of-State Defendants Are Protected By Conduct-Based Immunity ....................................................................................................7

    III.  PLAINTIFFS FAIL TO STATE A CLAIM ..........................................................9

        A.    Plaintiffs Have Conceded That Their "Invidious Persecution" And Civil Conspiracy Claims (Counts Six And Eight) Should Be Dismissed ..................................................................................................9

        B.    Plaintiffs' State-Law Claims (Counts Four, Five, And Eight) Are Barred By The Statute Of Limitations ...........................................10

        C.    Plaintiffs Fail To Satisfy The TVPA's Exhaustion Requirement (Count Three) ...........................................................................................11

        D.    Plaintiffs Fail To Plead Sufficient Facts To Support Any Of Their Claims ........................................................................................13

CONCLUSION ...................................................................................................................14

i

## TABLE OF AUTHORITIES

**CASES:**

*Adams v. Kan. State Univ.*,
  27 F. Supp. 2d 469 (S.D.N.Y. 1998)...........................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................8, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................................11

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
  137 S. Ct. 1312 (2017)..................................................................................................................12

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S.F. Cty.*,
  137 S. Ct. 1773 (2017)....................................................................................................................3

*Bundy v. Sessions*,
  387 F. Supp. 3d 121 (D.D.C. 2019)..............................................................................................10
  812 F. App'x 1 (D.C. Cir. 2020)....................................................................................................10

*CapitalKeys, LLC v. Democratic Republic of Congo*,
  No. 15-cv-2079, 2021 WL 2255362 (D.D.C. June 3, 2021).........................................................5

*Collett v. Socialist Peoples' Libyan Arab Jamahiriya,*
  362 F. Supp. 2d 230 3 (D.D.C. 2005)...........................................................................................12

*Davis v. Jackson*,
  No. 15-cv-5359, 2016 WL 5720811 (S.D.N.Y. Sept. 30, 2016) .................................................11

*Doe 1 v. Buratai*,
  318 F. Supp. 3d 218 (D.D.C. 2018)................................................................................................4

*Doe v. Exxon Mobil Corp.*,
  393 F. Supp. 2d 20 (D.D.C. 2005)................................................................................................12

*Enquist v. Chavez*,
  No. 2:11-cv-00572, 2012 WL 2872795 (E.D. Cal. July 11, 2012)..............................................11
  751 F.3d 1138 (9th Cir. 2014) .....................................................................................................11

*Escarria-Montano v. United States*,
  797 F. Supp. 2d 21 (D.D.C. 2011)..........................................................................................11, 12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021)....................................................................................................................4

*Harbury v. Hayden*,
    444 F. Supp. 2d 19 (D.D.C. 2006) ................................................................................. 12
    522 F.3d 413 (D.C. Cir. 2008) ....................................................................................... 12

*Johnson v. Marcheta Invs. Ltd. P'Ship*,
    711 A.2d 109 (D.C. 1998) ............................................................................................. 10

*Lewis v. Mutond*,
    918 F.3d 142 (D.C. Cir. 2019) ..................................................................................... 7, 8
    141 S. Ct. 156 (2020) ....................................................................................................... 7

*Livnat v. Palestinian Auth.*,
    82 F. Supp. 3d 19 (D.D.C. 2015) .................................................................................. 4, 5
    851 F.3d 45 (D.C. Cir. 2017) ........................................................................................... 4

*Mwani v. bin Laden*,
    417 F.3d 1 (D.C. Cir. 2005) .......................................................................................... 3, 5

*Nader v. Democratic Nat'l Comm.*,
    567 F.3d 692 (D.C. Cir. 2009) ........................................................................................ 10

*Porter v. Nussle*,
    534 U.S. 516 (2002) ........................................................................................................ 13

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) ............................................................................................ 4

*Rishikof v. Mortada*,
    70 F. Supp. 3d 8 (D.D.C. 2014) ........................................................................................ 9

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., Inc.*,
    820 F. Supp. 2d 62 (D.D.C. 2011) ............................................................................... 9, 10

*Saleh v. Al Nahyan*,
    No. 20-cv-1168 (ABJ), 2021 WL 4306113 (D.D.C. Sept. 22, 2021) ......................... 6, 10

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ..................................................................................................... 5, 6

*Sayyad v. Fawzi*,
    674 A.2d 905 (D.C. 1996) .............................................................................................. 11

*Williams v. Donovan*,
    219 F. Supp. 3d 167 (D.D.C. 2016) ............................................................................. 2, 7

*Yousuf v. Samantar*,
    699 F.3d 763 (4th Cir. 2012) ............................................................................................ 6

**STATUTES:**

28 U.S.C.
  § 1350, note § 2(b) .......................................................................................................11, 12

D.C. CODE
  § 12-301 ..............................................................................................................................10
  § 13-423(b) ...........................................................................................................................2

**OTHER AUTHORITIES:**

KATZMAN, KENNETH, CONG. RSCH. SERV., RS21852, THE UNITED ARAB EMIRATES
  (UAE):  ISSUES FOR U.S. POLICY (2020) ................................................................................ 6

RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES
  § 66(f) (1965) ........................................................................................................................7

WORKING GROUP OF THE ABA, REPORT ON THE U.S. FOREIGN SOVEREIGN
  IMMUNITIES ACT (2001) ........................................................................................................7

## INTRODUCTION

Plaintiffs' opposition brief confirms that there is no basis for this action to proceed in this Court against the President of the United Arab Emirates and the Crown Prince of Abu Dhabi (together, the "Head-of-State Defendants").

As to personal jurisdiction, plaintiffs point to no facts in their complaint that show any affiliation between the underlying controversy—the alleged assault on Ayman Saleh in the UAE—and the United States as a whole, never mind the specific District of Columbia forum in which they have sued. Plaintiffs' assertion that the Head-of-State Defendants directed the assault against the United States is not only devoid of any factual basis, but also contradicted by their own claim that the attackers released Mr. Saleh as soon as they realized his connection with the United States.

Plaintiffs' responses (to the extent they respond at all) to the Head-of-State Defendants' other threshold arguments for dismissal comprise little more than conclusory allegations and legal misunderstandings. Plaintiffs fail to rebut the Head-of-State Defendants' contentions that the Foreign Sovereign Immunities Act ("FSIA") bars their claims, that the President and the Crown Prince are entitled to both status-based and conduct-based immunity, that plaintiffs' state-law claims are time barred (for reasons this Court has already found), and that plaintiffs have failed to meet the exhaustion requirement of the Torture Victims Protection Act ("TVPA"). Even the allegations advanced for the first time in plaintiffs' opposition fall well short of the *Iqbal* standard.

For these reasons and those stated in the motion to dismiss, plaintiffs' complaint cannot be maintained against either the President or the Crown Prince and should be dismissed as to both Head-of-State Defendants.

**ARGUMENT**

I. **THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

   A. **Plaintiffs Have Not Established Personal Jurisdiction Under D.C. Law**

Plaintiffs have failed to plead facts sufficient to establish personal jurisdiction over the Head-of-State Defendants under the D.C. long-arm statute. Plaintiffs rely solely on D.C. Code § 13-423, which requires (in pertinent part) that (i) defendants "regularly" transact business or engage in a "persistent" course of conduct in the District of Columbia, and (ii) the claims arise from such acts. Yet the complaint contains only a single paragraph of vague and conclusory allegations that the Head-of-State Defendants "are currently conducting business" here, that they have "hired public relations firms" here, and that they "have visited this jurisdiction on a number of occasions." Compl. ¶ 5, ECF No. 1. None of those minimal allegations establishes long-arm jurisdiction over the Head-of-State Defendants. *See* ECF No. 41 ("MTD"), at 6-8.

In their opposition, plaintiffs for the first time contend that the Head-of-State Defendants conduct business in the District of Columbia because (i) the UAE embassy is located in the District, (ii) the UAE has worked with a *specific* D.C. public relations firm, and (iii) the US-UAE Business Council is located in the District. ECF No. 42 ("Opp'n Br."), at 4-5. Those allegations do not help plaintiffs because they concern the *UAE*—a separate defendant in this suit that has yet to be served. *See* MTD 4 n.4.[1] In any case, these allegations are not properly before the Court because plaintiffs did not include them in their complaint. *See Williams v. Donovan*, 219 F. Supp. 3d 167, 177-78

---

[1] Plaintiffs appear to direct their opposition to the UAE as well as the Head-of-State Defendants. To be clear, the UAE has never been served, and the Head-of-State Defendants' motion to dismiss was not filed on behalf of the UAE.

(D.D.C. 2016) ("[Plaintiffs] may not amend [their] complaint via the briefs in opposition to a motion to dismiss.").

Plaintiffs—fatally—still do not provide any basis (either in the complaint or otherwise) for concluding that the claims asserted against the Head-of-State Defendants "aris[e] from" any of those purported District of Columbia activities. *See* D.C. CODE § 13-423(b) ("When jurisdiction over a person is based solely upon [section 13-423], only a claim for relief *arising from* acts enumerated in this section may be asserted against him." (emphasis added)). In the absence of such a showing, District of Columbia law does not permit personal jurisdiction over the Head-of-State Defendants.

### B. Plaintiffs Fail To Allege Sufficient Contacts Between The Underlying Controversy And The Forum To Satisfy Due Process Or Rule 4(k)(2)

Plaintiffs also now appear to rely on Federal Rule of Civil Procedure 4(k)(2)—a basis never asserted in the complaint. Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant for claims arising under federal law so long as "the defendant is not subject to the jurisdiction of any single state court" and "the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States." *Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005). Even if satisfied, Rule 4(k)(2) at most could be used to establish personal jurisdiction only with respect to plaintiffs' *federal* claims (Counts Three and Six). *See id.* But plaintiffs cannot rely on Rule 4(k)(2) at all because any exercise of federal jurisdiction here would be inconsistent with constitutional due process.

To satisfy due process, plaintiffs must demonstrate "an affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017). Although the relevant forum for purposes of Rule 4(k)(2) is "the United States as a whole," *Mwani*, 417 F.3d. at 10, and not just the District of Columbia, nothing in the complaint

3

suggests that the President or the Crown Prince "purposefully avail[ed]" himself of the privilege of doing business anywhere in the United States in a way that is connected to the underlying controversy. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (alteration in original).

The underlying controversy in this case—the alleged assault on Mr. Saleh—is claimed to have taken place in a foreign country by foreign actors against a foreign citizen (as Mr. Saleh was at the time). Compl. ¶ 20. Controlling precedent is clear—and undisputed here—that when an alleged tortious act is committed abroad, it does not create personal jurisdiction in the United States unless the act was calculated to cause injury within the United States or was otherwise directed at the United States. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002); *Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 228 (D.D.C. 2018). Plaintiffs attempt to argue that the alleged assault was "directed at the United States" by claiming that Mr. Saleh was targeted "for his activities that occurred in the United States," namely his baptism and the free exercise of his religion. Opp'n Br. 6. Were those factual allegations actually contained in plaintiffs' complaint (they are not), it would still "require a logical leap to conclude that this specific attack—with no evident connections to the U.S.—was in fact directed at the United States." *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 35 (D.D.C. 2015), *aff'd*, 851 F.3d 45 (D.C. Cir. 2017). Indeed, plaintiffs' (new) allegation that it was Mr. Saleh's relations with the United States that "ultimately led to his release" (Opp'n Br. 6) suggests that Mr. Saleh's alleged attackers were determined *not* to target the United States.

Plaintiffs' reliance on *Mwani*—a case in which the D.C. Circuit concluded that Osama Bin Laden and Al Qaeda had "fair warning" that they would be subject to U.S. jurisdiction when they orchestrated the bombing of the U.S. Embassy in Nairobi—serves only to demonstrate how far

4

plaintiffs are from making the requisite jurisdictional showing. In *Mwani*, plaintiffs alleged "an ongoing conspiracy to attack the United States, with overt acts occurring within [United States] borders." 417 F.3d at 13. In this case, plaintiffs do not suggest that the alleged assault was meant to be communicated to or "felt" by the United States in any way. *Id.*

Lacking any legal or factual basis for establishing personal jurisdiction over the Head-of-State Defendants, plaintiffs seek to avert dismissal by requesting jurisdictional discovery. This Court should deny that request because plaintiffs do not "suggest that jurisdictional discovery could generate additional facts connecting this specific attack to the U.S." *Livnat*, 82 F. Supp. 3d at 35. Courts do not allow plaintiffs to "use jurisdictional discovery to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction." *CapitalKeys, LLC v. Democratic Republic of Congo*, No. 15-cv-2079, 2021 WL 2255362, at *18 (D.D.C. June 3, 2021) (internal quotation marks omitted).

## II. THE PRESIDENT AND CROWN PRINCE ARE IMMUNE FROM SUIT

### A. The FSIA Requires Dismissal Because The UAE Is The Real Party-In-Interest

In their motion to dismiss (at 10-11), the Head-of-State Defendants explained that plaintiffs' suit is in reality one against the UAE and thus subject to the FSIA's immunity bar. Plaintiffs' sole response is to reiterate that plaintiffs "have sued both the state and individuals" and to assert that "the UAE is not the only real party-in-interest." Opp'n Br. 8. But the Supreme Court has warned that a plaintiff's "artful pleading" cannot sidestep the FSIA simply by naming "individual official[s]" as defendants. *Samantar v. Yousuf*, 560 U.S. 305, 324 (2010). Plaintiffs fail to explain why their complaint's allegations concerning the Head-of-State Defendants should not be treated as tantamount to allegations against the UAE government, "the real party in interest." *Id.* at 325. In fact, plaintiffs elsewhere treat the UAE and the Head-of-State Defendants interchangeably. *See* Opp'n Br. 5 (relying on UAE to establish personal jurisdiction); *see also*

MTD 11, 15-16 (identifying examples from complaint). As a result, plaintiffs effectively concede that their action against the Head-of-State Defendants creates the "potential for injury to the interests of the absent sovereign," and thus must be dismissed under the FSIA. *Samantar*, 560 U.S. at 325; *see Saleh v. Al Nahyan*, No. 20-cv-1168 (ABJ), 2021 WL 4306113, at *5 (D.D.C. Sept. 22, 2021) (deeming claim "conceded" where plaintiffs "[did] not respond . . . in their opposition").

### B.    The Head-of-State Defendants Are Protected By Status-Based Immunity

At any rate, both the President and Crown Prince are protected by the common law principle of status-based immunity, which shields certain high-level foreign officials from legal proceedings in the United States. *Yousuf v. Samantar*, 699 F.3d 763, 772 (4th Cir. 2012); *see* MTD 12-14. Plaintiffs have no response to the argument that H.H. Sheikh Khalifa, *the President of the UAE*, is entitled to status-based immunity. Plaintiffs merely make the claim, without citation or explanation, that the President cannot assert status-based immunity "due to the FSIA." Opp'n Br. 8. That is a *non sequitur*. "Even if a suit is not governed by the [FSIA], it may still be barred by foreign sovereign immunity under the common law." *Samantar*, 560 U.S. at 324.

Plaintiffs' arguments with respect to the Crown Prince, H.H. Sheikh Mohamed, are equally unavailing. The Crown Prince has been considered the functional head of state for the UAE, and treated as such by the United States, since 2014, when the President was afflicted by a serious health condition following a stroke. Kenneth Katzman, Cong. Rsch. Serv., RS21852, The United Arab Emirates (UAE): Issues for U.S. Policy 1-2 (2020)[2]; *see also* MTD 13-14 (listing Crown Prince's bilateral meetings with heads of states and heads of governments). Thus, just as the President enjoys status-based immunity as head of state, so too does the Crown Prince. Given plaintiffs' allegation that the Crown Prince "is considered the de facto ruler of the UAE," Compl.

---

[2] https://crsreports.congress.gov/product/pdf/RS/RS21852/129.

6

¶ 9, they cannot now "amend [their] complaint via the[ir] brief[] in opposition," *Williams*, 219 F. Supp. 3d at 177-78, to say that the Crown Prince is in fact "not a head of state," Opp'n Br. 8.[3]

Moreover, status-based immunity is not limited to heads of state alone. On the contrary, it "has been applied to family members of a head of state and to prime ministers and other members of the 'government.'" WORKING GROUP OF THE ABA, REPORT ON THE U.S. FOREIGN SOVEREIGN IMMUNITIES ACT 56 (2001)[4]; *see* MTD 12-13. Both the President and Crown Prince are therefore entitled to status-based immunity under the common law.

### C. The Head-of-State Defendants Are Protected By Conduct-Based Immunity

Beyond status-based immunity, under the Restatement (Second) of Foreign Relations Law of the United States § 66(f) (1965), a foreign official may be protected by conduct-based immunity so long as three factors are present: (1) the defendant is a "public minister, official, or agent of the [foreign] state"; (2) the alleged "acts [were] performed in his official capacity"; and (3) "the effect of exercising jurisdiction would be to enforce a rule of law against the state." RESTATEMENT § 66(f). For its part, the United States has emphasized that the near-dispositive question is the second one—*i.e.*, whether the alleged acts were taken by foreign officials' in their official capacity. *See* MTD 14-15. The Head-of-State Defendants have explained why they, as President and Crown Prince, meet all the conduct-based immunity standards. MTD 14-17.

In response, plaintiffs first argue (Opp'n Br. 9) that the TVPA overrides conduct-based immunity. Even if that were true, that conclusion would be relevant to plaintiffs' TVPA claim (Count Three) alone. But plaintiffs overread the TVPA and the D.C. Circuit's decision in *Lewis v.*

---

[3] Plaintiffs cite a California district court decision from 2010 denying the Crown Prince status-based immunity. *See Hassen v. Nahyan*, No. 2:09-cv-1106 (C.D. Cal. Sept. 17, 2010), ECF No. 53. That decision issued four years before the President's stroke and is thus irrelevant to the Crown Prince's current status.

[4] https://tinyurl.com/3cuh6z8z.

7

*Mutond*, 918 F.3d 142, 147 (D.C. Cir. 2019), *cert. denied*, 141 S. Ct. 156 (2020). In that case, the D.C. Circuit nowhere suggested conduct-based immunity is categorically unavailable for TVPA claims. Instead, it stated only that "[i]n the opinion by Senior Judge Randolph, which is joined in relevant part by Judge Srinivasan, we provide the alternative holding that the TVPA displaces conduct-based immunity *in this context*." *Id.* at 144 (emphasis added). The context here is different. Unlike in *Mutond*, and for reasons sets forth in the motion to dismiss that plaintiffs do not contest, the effect of exercising jurisdiction over the Head-of-State Defendants would be to enforce a rule of law against the state. *Compare* MTD 16-17 (describing how finding of liability as to leaders of UAE for actions taken as UAE's leaders would necessarily implicate liability of UAE itself), *with Mutond*, 918 F.3d at 147 (concluding that taking foreign officials away from their official state duties was insufficient to satisfy the third prong of conduct-based immunity). Conduct-based immunity in this case thus does not render the TVPA a nullity. This Court should in any case refrain from making any sweeping statements regarding the interplay between conduct-based immunity under Restatement § 66(f) and the TVPA—especially given that plaintiffs devote one sentence to the subject and the TVPA claim fails on other grounds.

Plaintiffs next assert (Opp'n Br. 9) that the Head-of-State Defendants are not entitled to conduct-based immunity because they "did not act in their official capacity as Heads of States" in committing the alleged acts. But plaintiffs cannot circumvent conduct-based immunity through such "[t]hreadbare recitals . . . [and] mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see Adams v. Kan. State Univ.*, 27 F. Supp. 2d 469, 471 (S.D.N.Y. 1998) ("Plaintiffs' conclusory statement that the 'defendants were not acting in their official capacity when they committed [the acts]' is not sufficient to prove that the individual defendants were acting other than in their official capacities." (citation omitted)).

8

All indications in plaintiffs' complaint point to the President and Crown Prince having undertaken the alleged acts in their official capacities. MTD 15-16. Critical actions attributed in the complaint to the President or Crown Prince are likewise attributed to the UAE government. For instance, the complaint avers both that it was the Head-of-State Defendants that hired the security company that employed the security agents in question, *see* Compl. ¶¶ 13, 30, 33, 38, 40, 44, and that it was the UAE that did so, *see id.* ¶¶ 6, 46, 48, 49, 50. Plaintiffs further allege that the Crown Prince and UAE adopted the same policy of close surveillance of UAE citizens. *See id.* at 11-12. Further still, plaintiffs' TVPA and civil conspiracy claims are brought against both Head-of-State Defendants and the UAE, *see* Counts Three and Eight, while the claim for the actual assault is brought against the UAE alone, *see* Count One. Nowhere does the complaint allege that the Head-of-State Defendants acted beyond the scope of their authority, or that their actions were not taken on behalf of the state. *See Rishikof v. Mortada*, 70 F. Supp. 3d 8, 13 (D.D.C. 2014). Hence, despite plaintiffs' unsupported assertion in their opposition brief, nothing in the complaint suggests that the Head-of-State Defendants acted in their personal capacities with respect to the alleged assault.

### III.   PLAINTIFFS FAIL TO STATE A CLAIM

#### A.   Plaintiffs Have Conceded That Their "Invidious Persecution" And Civil Conspiracy Claims (Counts Six And Eight) Should Be Dismissed

Plaintiffs have abandoned their "invidious persecution" claim (Count Six), which was apparently brought under the Alien Tort Statute ("ATS"), by making no mention of it. Plaintiffs offer no response to the reasons why their ATS claim cannot proceed: (i) the ATS does not apply to conduct occurring exclusively within a foreign sovereign's territory; and (ii) the ATS provides jurisdiction only for suits brought by non-U.S. citizens. *See* MTD 21-22. Accordingly, this Court should dismiss plaintiffs' "invidious persecution" claim with prejudice. *See Sabre Int'l Sec. v.*

*Torres Advanced Enter. Sols., Inc.*, 820 F. Supp. 2d 62, 71 (D.D.C. 2011); *Saleh* 2021 WL 4306113, at *5.

Plaintiffs have likewise failed to salvage their civil conspiracy claim (Count Eight). Although plaintiffs note that their civil conspiracy claim alleges that "the Crown Prince has conspired to 'prevent religious conversions and inflict severe pain on all UAE citizens who renounced the Islamic faith,'" Opp'n Br. 11 (quoting Compl. ¶ 50), they still do not specify what viable tort theory supports the claim or how "the elements of th[at] underlying tort are satisfied" here, *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009); *see* MTD 19-20. Accordingly, this Court should dismiss plaintiffs' civil conspiracy claim with prejudice as well. *See Sabre Int'l Sec.*, 820 F. Supp. 2d at 71; *Saleh*, 2021 WL 4306113, at *5.

### B. Plaintiffs' State-Law Claims (Counts Four, Five, And Eight) Are Barred By The Statute Of Limitations

This Court should also dismiss plaintiffs' conspiracy claim (Count Eight) and intentional infliction of emotional distress claims (Counts Four and Five) as time barred—as it already did with respect to the civil conspiracy claim against DarkMatter—because those claims are subject to a three-year statute of limitations at most. *See* MTD 18-20 (discussing D.C. CODE § 12-301). Plaintiffs concede as much by arguing (Opp'n Br. 11-13) only that the claims should be equitably tolled.

Plaintiffs' state-law claims, however, cannot be equitably tolled. "District of Columbia law does not recognize an equitable tolling exception to the statute of limitations." *Johnson v. Marcheta Invs. Ltd. P'Ship*, 711 A.2d 109, 112 (D.C. 1998); *see also Bundy v. Sessions*, 387 F. Supp. 3d 121, 125 (D.D.C. 2019), *aff'd*, 812 F. App'x 1 (D.C. Cir. 2020). As the D.C. Court of Appeals has explained, "where the legislature has provided no savings statute, courts would exceed

10

their prescribed role by providing a remedy where the legislature has determined that none should lie." *Sayyad v. Fawzi*, 674 A.2d 905, 906 (D.C. 1996).[5]

### C. Plaintiffs Fail To Satisfy The TVPA's Exhaustion Requirement (Count Three)

Plaintiffs' TVPA claim must be dismissed because plaintiffs have failed to exhaust available legal remedies in the place where the tort occurred. 28 U.S.C. § 1350, note § 2(b) ("A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."); *see* MTD 20-21. Although a failure to exhaust local remedies can be excused where such remedies are inadequate or unavailable, the burden is on the plaintiff to make such a showing. *See Escarria-Montano v. United States*, 797 F. Supp. 2d 21, 25 (D.D.C. 2011) (dismissing TVPA claim for lack of subject matter jurisdiction because "Plaintiff has not shown that he has exhausted his

---

[5] Citing authorities concerning federal law treatment of TVPA and other federal claims (and none having to do with D.C. law), plaintiffs insist that they should be able to take advantage of an "extraordinary circumstances" exception to the statute of limitations. Even if such a theory of equitable tolling were available under D.C. law, no "extraordinary circumstance" stood in the way of this suit. Plaintiffs claim that they did not file sooner out of fear of the Head-of-State Defendants' reach, Opp'n Br. 12, alleging that UAE security agents could kidnap and forcibly remove them from Oregon, Compl. ¶ 13. But these naked assertions are unsupported by any facts, let alone facts that could plausibly raise the assertions above the level of rank speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (neither "labels and conclusions" nor "naked assertion[s]" in a complaint suffice to establish entitlement to relief); *see also Davis v. Jackson*, No. 15-cv-5359, 2016 WL 5720811, at *11 (S.D.N.Y. Sept. 30, 2016) ("Generalized allegations of fear of retaliation . . . are not sufficient to establish 'extraordinary circumstances' warranting application of equitable tolling."). Moreover, plaintiffs' suggestion that they finally felt safe to file suit in 2020 against the Head-of-State Defendants is belied by statements in both their complaint and opposition that they continue to feel threatened by the Head-of-State Defendants to this day. *See, e.g.*, Compl. ¶ 13 (alleging that "[t]oday, [plaintiffs] still feel threatened and exposed and . . . [fear] that the President and Crown Prince can . . . forcibly remove them from Oregon and literally kidnap and eventually imprison them in the UAE."); Opp'n Br. 12 ("[C]ontinuing through today[,] Plaintiffs fear the Defendants and their reach."). Plaintiffs have thus made "no showing as to how things improved for [them] to be able to file [their suit] when [they] did." *Enquist v. Chavez*, No. 2:11-cv-00572, 2012 WL 2872795, at *7 (E.D. Cal. July 11, 2012), *subsequently dismissed*, 751 F.3d 1138 (9th Cir. 2014).

administrative remedies"); *Harbury v. Hayden*, 444 F. Supp. 2d 19, 41 (D.D.C. 2006), *aff'd*, 522 F.3d 413 (D.C. Cir. 2008) (concluding TVPA claim should be dismissed because plaintiff "neither alleged nor established that she has ever pursued and/or exhausted her remedies against her husband's alleged torturers in the place in which the conduct giving rise to the claim occurred").

Plaintiffs are thus wrong to claim (Opp'n Br. 13) that the Head-of-State Defendants have the burden of demonstrating the availability and adequacy of remedies in the UAE. Plaintiffs cite *Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, which reached that conclusion based on the court's reading of the TVPA's legislative history. 362 F. Supp. 2d 230, 243 (D.D.C. 2005). But such a conclusion conflicts with the text's imperative that "[a] court shall decline to hear a claim under [the TVPA] if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." 28 U.S.C. § 1350, note § 2(b). The TVPA's text or design in no way suggests that courts should *begin* with the presumption that local remedies in foreign countries are inadequate and unavailable. For good reason: such a presumption would risk "affron[ting] other nations, producing friction in [the United States'] relations with those nations and leading some to reciprocate" in kind. *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1322 (2017). In line with the TVPA's text, more recent cases have sensibly placed the burden squarely on plaintiffs to make the requisite showing. *See Escarria-Montano*, 797 F. Supp. 2d at 25; *Harbury*, 444 F. Supp. 2d at 41.

Here, plaintiffs make no attempt to carry their burden of establishing that remedies afforded by the UAE judicial system would be either inadequate or unavailable to them. Instead, plaintiffs assert that they face a "risk of reprisal and violence" if they pursue "a local remedy." Opp'n Br. 13-14. But they fail to substantiate that alleged risk or show that it is "substantial and serious." *Doe v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20, 25 (D.D.C. 2005). Given the Supreme Court's

12

recognition that exhaustion is still necessary for grievances against individuals in positions of power, *see Porter v. Nussle*, 534 U.S. 516, 519 (2002) (holding that prisoners were still required to exhaust prison grievance procedures even when their grievance was an alleged assault by prison guards), plaintiffs cannot sidestep Congress's imposition of an express exhaustion requirement for TVPA claims by making a bare allegation that they "feel threatened and exposed" while they continue to reside in Oregon.  Opp'n Br. 13-14; *see* note 5, *supra*.

### D. Plaintiffs Fail To Plead Sufficient Facts To Support Any Of Their Claims

Finally, plaintiffs' claims against the Head-of-State Defendants should be dismissed because they do not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  As explained in the Head-of-State Defendants' motion to dismiss (at 17-18), the complaint does not allege with adequate specificity that the President or Crown Prince participated in, ordered, or otherwise were involved in the alleged assault.  Plaintiffs' complaint alleges only that the President and/or Crown Prince, on behalf of the UAE government, hired a security company, which in turn allegedly employed the security agents who allegedly assaulted Mr. Saleh.  Compl. ¶¶ 6, 40.  Although plaintiffs' opposition reiterates their conclusory allegation that the Head-of-State Defendants "knew" about the assault, Opp'n Br. 10, plaintiffs fail to point to any specific facts from which a court could plausibly infer the Head-of-State Defendants had such knowledge.  That conspicuous omission dooms their claims against the Head-of-State Defendants under any theory.

## **CONCLUSION**

For the foregoing reasons and those stated in the motion, the complaint should be dismissed as to the President and Crown Prince.

Dated: December 23, 2021

Stephen M. Baldini
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
44th Floor
New York, NY 10036-6745
Telephone: (212) 872-1000
Fax: (212) 872-1001

Respectfully submitted,

*/s/ Z.W. Julius Chen*
Z.W. Julius Chen (D.C. Bar No. 1002635)
Hal Shapiro (D.C. Bar No. 440709)
Pratik A. Shah (D.C. Bar No. 497108)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K St N.W.
Washington, D.C. 20006
Telephone: (202) 887-4475
Fax: (202) 887-4288
chenj@akingump.com

*Counsel for Defendants President Khalifa Bin Zayed Al Nahyan and
Crown Prince Mohamed Bin Zayed Al Nahyan*