## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                    )
AYMAN SALEH, et al.,                )
                                    )
               Plaintiffs,          )
                                    )
       v.                           )          Civil Action No. 20-1168 (ABJ)
                                    )
KHALIFA BIN                         )
ZAYED AL NAHYAN                     )
President, et al.,                  )
                                    )
               Defendants.          )
                                    )
```

## <u>ORDER</u>

On May 5, 2020, plaintiffs Ayman Saleh and Linda Saleh brought this action against four

defendants:  the United Arab Emirates ("UAE"); the President of the UAE, Khalifa bin Zayed Al

Nahyan ("the President") and the Crown Prince and Deputy Supreme Commander of the UAE

Armed Forces, Sheikh Mohammed bin Zayed Al Nahyan ("the Crown Prince") (collectively,

"Individual Defendants"); and DarkMatter, a UAE-based cybersecurity company.[1]   Compl.

[Dkt. # 1]  ¶¶ 8–11.   The complaint seeks damages pursuant to "the Alien Tort Statute[,]

28 U.S.C. § 1350[,] . . . the Torture Victim Protection Act [of 1991,] 28 U.S.C. § 1350, . . . the

Fourth Geneva Convention, President Lincoln's 1863 Lieber Code, the Law of Nation's clause in

the U.S. Constitution, the bilateral treaty between the UAE and the U.S., and various international

human rights conventions, e.g. the UN Convention against Torture and Other Cruel, Inhuman or

Degrading Treatment or Punishment."  Compl. ¶ 1.

---

1      On September 22, 2021, the Court granted defendant DarkMatter's motion to dismiss this
action against it for failure to state a claim upon which relief may be granted and for lack of subject
matter jurisdiction.  Order [Dkt. # 35]; Mem. Op. [Dkt. # 36].

The events underlying the complaint took place when the plaintiffs were visiting the UAE in October of 2015.  Compl. ¶ 15.  They allege that security agents who were hired by the UAE "kidnapp[ed] and beat[]" plaintiff Ayman Saleh, who was at that time a citizen of the UAE, because he had converted from Islam to Christianity.  Compl. ¶¶ 6–7, 12.  Plaintiffs seek damages for the physical injury and emotional harm they suffered as a result of these actions, and they also request the entry of an order terminating all military assistance from the U.S. Department of Defense to the UAE.  Compl. at 5–12.

Pending before the Court is the Individual Defendants' motion to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6).  Joint Mot. of Individual Defs. to Dismiss Pls.' Claims, Individual Defs.' Mem. of Law in Supp. of Mot. to Dismiss [Dkt. # 41] ("Indiv. Defs.' Mot.").  They argue that the Court does not have personal jurisdiction over them; that they are immune from suit; and that plaintiffs have failed to state a claim upon which relief can be granted.  *See* Indiv. Defs.' Mot. at 6–21.  The motion is fully briefed.  *See* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss [Dkt. # 42] ("Pls.' Opp."); Indiv. Defs.' Reply Mem. in Supp. of Mot. to Dismiss [Dkt. # 44] ("Indiv. Defs.' Reply").

Since plaintiffs have failed to carry their burden to show that the Court has personal jurisdiction over the two Individual Defendants, the motion is **GRANTED** and the claims against the President of the UAE and the Crown Prince in Counts III, IV, V, VI, and VIII are dismissed. In light of that ruling, the Court need not reach the other grounds for the motion.

## BACKGROUND

Plaintiffs Ayman Saleh and Linda Saleh are married and domiciled in Portland, Oregon. Compl. ¶¶ 2, 7.  Linda is an American citizen, and Ayman now holds dual citizenship in the United States and the UAE.  Compl. ¶¶ 2, 6.  At the time of the attack, Ayman was a citizen of the UAE, living in the United States and married to a U.S. citizen, Pls.' Opp. at 2; *see also* Compl. ¶ 20, and the couple had traveled to the UAE with their newborn child.  Compl. ¶ 7.

The complaint alleges that Ayman left their hotel room and was walking to the grocery store in Abu Dhabi on October 14, 2015, when he was approached by state security agents. Compl. ¶ 15.  The agents claimed they needed to ask Ayman a few questions.  Compl. ¶ 15.  Ayman went with them "because he feared that a long interrogation would ensue if he did not do so." Compl. ¶ 16.  The agents escorted Ayman to a police station where they locked him in an office and tortured him.  Compl. ¶ 16.  Ayman was strangled, kicked in the head, "smacked across the face, dragged across the floor, repeatedly whipped with electrical wire, and threatened with a gun to his head."  Compl. ¶ 17.

During the assault, Ayman was repeatedly questioned about his religion.  Compl. ¶ 18. Ayman told the agents he was Muslim, which upset the agents and did not bring an end to the attack.  Compl. ¶ 18.  After Ayman's repeated insistence that he was Muslim, the agents "pulled out a cell phone with [Ayman's] baptism certificate from 2013 (for converting to Christianity) and placed it on the table in front of [him]."  Compl. ¶ 18.  Ayman contends that at that moment, he believed he was being tortured because he had converted from Islam to Christianity, Compl. ¶¶ 18, 21, and because the UAE government "prescribes punishment, including the death penalty, for the possession of material that opposes Islam."  Compl. ¶ 9.  Converting from Islam

3

to Christianity, according to plaintiffs, "is something that you d[o] not do in the UAE." Compl. ¶ 33.

While Ayman was being tortured, Linda was in a hotel room with their newborn baby. Compl. ¶ 35. Plaintiffs allege that when Ayman did not return to the hotel room after a few hours, she "repeatedly called his cell phone," and "started to have panic attacks through the night and all of the next day." Compl. ¶ 35. The next evening, Ayman returned. Compl. ¶ 36. The complaint alleges that Linda still suffers from severe anxiety and takes medication to cope with the trauma and the anxiety resulting from her husband's disappearance and torture. Compl. ¶ 36.

Plaintiffs also allege that the Individual Defendants had hired the security company that employed the agents who detained and tortured Ayman. Compl. ¶ 40. Plaintiffs claim that the UAE "has adopted a policy of close surveillance of its citizens in the guise of national security." Compl. ¶ 46. They assert that the Crown Prince conspired to "prevent religious conversions and inflict severe pain on all UAE citizens who renounced the Islamic faith," including on Ayman Saleh, who is also a citizen of the UAE.[2] Compl. ¶¶ 6, 49–50; *see also* Compl. ¶ 33 ("[T]he Crown Prince had given instructions to the national security apparatus that he would protect any official that was accused of maiming and torturing and/or killing an infidel . . . ."). According to the plaintiffs, "[a]lthough the security agents hired by the Crown Prince did not admit they were inflicting pain and suffering on the Plaintiff because he had converted [to Christianity], it was obvious that was the only reason why the Plaintiff would be treated the way he was." Compl. ¶ 38.

The complaint includes eight causes of action based on these allegations:

---

2       The complaint also alleges that, "[a]t the time that this brutal attack occurred and subsequent session where he was tortured and terrorized, the Plaintiff [Ayman Saleh] was not [a] U.S. citizen. Thus, he can claim protection under the Alien Tort Statute." Compl. ¶ 20.

- Count I:  Assault and battery committed by the United Arab Emirates, Compl. ¶¶ 14–18.

- Count II:  Inhumane acts committed by Defendant United Arab Emirates, Compl. ¶¶ 19–23.

- Count III:  Violation of the Torture Victim Protection Act by Defendant United Arab Emirates, Defendant Crown Prince Mohammed bin Zayed Al Nahyan, and Defendant DarkMatter, Compl. ¶¶ 24–25.

- Count IV:  Intentional infliction of emotional distress on Plaintiff Ayman Saleh by Defendants Sheikh Mohammed bin Zayed Al Nahyan and President Khalifa bin Zayed al Nahyan, Compl. ¶¶ 26–33.

- Count V:  Intentional infliction of emotional distress on Plaintiff Linda Saleh by Defendants Sheikh Mohammed bin Zayed Al Nahyan and President Khalifa bin Zayed Al Nahyan, Compl. ¶¶ 34–36.

- Count VI:  Invidious persecution based upon religious discrimination by Defendants Sheikh Mohammed bin Zayed Al Nahyan and President Khalifa bin Zayed Al Nahyan, Compl. ¶¶ 37–40.

- Count VII:  Violation of the Leahy Law by Defendant United Arab Emirates, Compl. ¶¶ 41–44.

- Count VIII:  Civil conspiracy committed by Defendant United Arab Emirates, Defendant Crown Prince Mohammed bin Zayed Al Nahyan, and Defendant DarkMatter.  Compl. ¶¶ 45–50.


## LEGAL STANDARD

### I.  Consideration of a Motion under Fed. R. Civ. Proc. 12(b)(2)

It is the plaintiff who bears the burden of establishing personal jurisdiction over each defendant.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  In order to survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must make a prima facie showing of the pertinent jurisdictional facts."  *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  To establish that personal jurisdiction exists, "[t]he plaintiff must allege specific acts connecting the defendant

with the forum." *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).   Plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction[.]" *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). However, "the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, [the plaintiff] may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as she can otherwise obtain.'" *Urb. Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010), quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (alteration in original).   Any factual discrepancies should be resolved in favor of the plaintiff.  *See Crane*, 894 F.2d at 456.

But the Court need not treat all of a plaintiff's jurisdictional allegations as true.  *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  "Instead, the court 'may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.'"  *In re Papst Licensing*, 590 F. Supp. 2d at 98, quoting *Philip Morris Inc.*, 116 F. Supp. at 120 n.4.

## II.   Personal Jurisdiction

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry:  A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."   *GTE New Media Servs. Inc. v. BellSouth Corp.*,

6

199 F.3d 1343, 1347 (D.C. Cir. 2000); *see Forras v. Rauf*, 812 F.3d 1102, 1105–06 (D.C. Cir. 2016); *see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105 (1987) ("[A] federal court normally looks . . . to the long-arm statute of the State in which it sits to determine whether" exercise of personal jurisdiction is warranted).

The District of Columbia's long arm statute provides:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

(7) marital or parent and child relationship in the District of Columbia[.]

D.C. Code § 13-423(a).

Even when the long-arm statute has been satisfied, a plaintiff must also show that the exercise of personal jurisdiction comports with the due process clause of the United States Constitution. "The Due Process Clause of the Fourteenth Amendment constrains a [forum's] authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*,

7

571 U.S. 277, 283 (2014); *see Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (the exercise of personal jurisdiction must "comport[ ] with the limits imposed by federal due process").  Although the defendant does not need to be physically present in the forum, the defendant must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).

The due process clause also requires that individuals "have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring) (brackets omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").  "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  *Mwani*, 417 F.3d at 12 (internal quotation marks and citations omitted).  A defendant's contacts must be "with the forum State itself, not . . . with persons who reside there." *Walden*, 571 U.S. at 285.

The grounds for the exercise of personal jurisdiction over a defendant may be either general or specific.  *See Livnat v. Palestinian Auth*., 851 F.3d 45, 56 (D.C. Cir. 2017).  General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," whereas specific jurisdiction requires an "affiliation between the forum and the underlying controversy."  *Id.* (internal quotation marks and citation omitted).  "For an

individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Specific jurisdiction over a non-resident defendant would be appropriate where "there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (alteration in original), quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Because plaintiffs allege that "[a]ll Defendants were domiciled in the UAE at all relevant times," Compl. ¶ 3, and that all acts were committed in the UAE, Compl. ¶¶ 12, 15, the question to be determined here is whether the Individual Defendants are subject to specific jurisdiction. To meet the test for specific jurisdiction, "the plaintiff must allege some specific facts evidencing purposeful activity by the defendants in the District of Columbia by which they invoked the benefits and protections of the laws of the District of Columbia." *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 44 (D.D.C. 2018). Moreover, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotation marks and citations omitted); *see also Walden*, 571 U.S. at 284 ("[D]efendant's suit-related conduct must create a substantial connection with the forum State.").

## ANALYSIS

### I.   The D.C. Long-Arm Statute

The complaint alleges that the Court can exercise personal jurisdiction over the two Individual Defendants because "[t]he UAE Embassy is located in this jurisdiction," "[t]he President and Crown Prince of the UAE have visited this jurisdiction on a number of occasions,"

and the Individual Defendants "have, inter alia, hired public relations firms in this jurisdiction and are currently conducting business here."  Compl. ¶ 5.  In their opposition to the motion to dismiss, plaintiffs point to section 13-423(a)(4) of the District of Columbia's long-arm statute, and they remind the Court that it may exercise personal jurisdiction over a person to hear a claim arising from that person's "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  Pls.' Opp. at 3–4, quoting D.C. Code § 13-423(a)(4).

As the D.C. Circuit has explained:

> [U]nder (a)(4), the act outside/*impact inside* the forum is the basis for drawing the case into the court, but because the harm-generating act (or omission) occurred outside, the statute calls for something more.  The "something more" or "plus factor" does not itself supply the basis for the assertion of jurisdiction, but it does serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.

*Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987) (emphasis in original).  Thus, the words "regularly," "persistent," and "substantial" are all fundamental to this provision, as there must be "some other reasonable connection between the District and the defendant."  *Founding Church of Scientology of Washington, D.C. v. Verlag*, 536 F.2d 429, 432 (D.C. Cir. 1976), *abrogated on other grounds by Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 224 (D.C. Cir. 1986).

But the plaintiffs have offered little or nothing to establish the regular or persistent connection to the District that would be necessary to establish specific jurisdiction over the Individual Defendants under the D.C. long-arm statute.  First of all, it is not relevant to the analysis that "[t]he UAE Embassy is located in this jurisdiction," Compl. ¶ 5, as the UAE is separately named as a defendant, and the motion before the Court pertains only to the Individual Defendants.

Plaintiffs' allegation that the Individual Defendants "have visited this jurisdiction on a number of occasions," Compl. ¶ 5, does not demonstrate a substantial affiliation with the forum either.  *See e.g., Doe v. City of Boston*, No. CV 20-2948 (CKK), 2021 WL 2457961, at *7 (D.D.C. June 16, 2021) (finding that "only two identified trips into the District of Columbia . . . does not show a persistent course of intra-forum conduct under subsection (a)(4)"); *Groop Internet Platform Inc. v. Psychotherapy Action Network*, No. CV 19-1854 (BAH), 2020 WL 353861, at *8 (D.D.C. Jan. 21, 2020) ("[F]our trips [to Washington, D.C.] over twenty years falls far short of coming within the long-arm statute's ambit."); *Lewy v. Southern Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 124 (D.D.C. 2010) ("Occasional travel to the District is . . . insufficient" to establish a persistent course of conduct); *Urb. Inst.*, 681 F. Supp. at 47–48 (finding that three business trips to Washington, D.C. did not qualify as persistent course of conduct); *Burman v. Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 153–54 (D.D.C. 2006) (finding that attendance by defendants' employees at continuing education programs, seminars, and conferences in Washington, D.C. was not a persistent course of conduct when plaintiffs "provided no evidence that these trips involved doing or soliciting business" and "there [was] no evidence that these excursions to the District of Columbia [were] regular in nature or otherwise exemplify a persistent course of conduct").

The conclusory allegation that the Individual Defendants have "hired public relations firms in this jurisdiction and are currently conducting business here," Compl. ¶ 5, does not satisfy plaintiffs' burden either, as the complaint is devoid of any other details or allegations that would support a finding that the Individual Defendants were conducting business in this jurisdiction at all, much less doing so "regularly."  And plaintiffs' own opposition makes it clear that the public

relations effort has been conducted on behalf of the UAE, not the Individual Defendants.  *See* Pls.'

Opp. at 5.

More important, even if the visits to Washington or the retention of a public relations firm

here did rise to the level of doing business on the part of the Individual Defendants, the claims in

the complaint about torture in the UAE do not arise from the contacts alleged to establish

jurisdiction, so what the plaintiffs have put forward would not establish specific jurisdiction over

the claims.  *See Goodyear*, 564 U.S. at 919.

## II.    **The Due Process Clause**

Furthermore, if plaintiffs could show that "the literal terms of the long-arm statute have

been satisfied, [they] must still show that the exercise of personal jurisdiction is within the

permissible bounds of the Due Process Clause."  *GTE New Media Servs. Inc.*, 199 F.3d at 1347,

quoting *International Shoe Co.*, 326 U.S. at 316.  Plaintiffs maintain in their Opposition that they

have satisfied the "minimum contacts" test:

> Defendants availed themselves to the laws of this jurisdiction through their
> embassy located squarely in Washington D.C., and it should be foreseeable
> to anticipate litigation in a forum where you conduct business regularly.
> The embassy is the representative for UAE in the United States.  The
> website for the D.C. embassy boasts of several forms of contact within D.C.,
> including, but not limited to, trade and business relations in the District of
> Columbia.
>
> Additionally, UAE has called on a D.C. Public Relations firm, The Harbour
> Group, to []understand how it is viewed by influencers in Washington D.C.
> This initiative was led by the Washington D.C. embassy on behalf of UAE.
> The UAE also has contacts with the forum state in the form of a U.S.-U.A.E.
> Business Council whose mission it is to "provide its membership
> unparalleled access to senior decision makers in business and government
> in the U.A.E. and in the U.S."

Pls.' Opp. at 4–5 (internal footnotes omitted).  But here again, plaintiffs are blurring the distinction between the UAE – the entity with the diplomatic presence and the alleged trade and business relationships – and the Individual Defendants, and even when faced with the motion to dismiss, they have not pointed to a single fact that would show that the Individual Defendants themselves "'purposefully directed' any activities at residents of the District of Columbia . . . [or] that [they have] any 'contacts, ties, or relation' to the District of Columbia."  *Buesgens v. Brown*, 567 F. Supp. 2d 26, 36 (D.D.C. 2008), quoting *Burger King*, 471 U.S. at 472.

III.    **Fed. R. Civ. P. 4(k)(2)**

If "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," as is the case here for the Individual Defendants, Federal Rule of Civil Procedure 4(k)(2) may be a source of personal jurisdiction.  *See* Pls.' Opp. at 6–7; Fed. R. Civ. P. 4(k)(2)(A); *Mwani*, 417 F.3d at 10.  Federal Rule of Civil Procedure 4(k)(2) provides that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant," but only if "exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2)(B).

Plaintiffs have submitted evidence showing that the Individual Defendants were served with process.  Aff. of Service [Dkt. # 37] (service on Sheikh Khalifa bin Zayed Al Nahyan); Aff. of Service [Dkt. # 38] (service on Sheikh Mohammed bin Zayed Al Nahyan).  This satisfies the procedural requirement of serving a summons, but the question remains as to whether the exercise of jurisdiction would satisfy due process.

When applying the constitutional principles set out above in the context of Rule 4(k)(2), the inquiry becomes whether the defendant has minimum contacts with the United States as a whole, as opposed to the forum state in particular.  *Mwani*, 417 F.3d at 11; *see also Triple Up Ltd.*

13

*v. Youku Tudou Inc.*, No. CV 17-7033, 2018 WL 4440459, at *2 (D.C. Cir. July 17, 2018) (finding there would be personal jurisdiction over defendant, a Chinese company, if its suit-related conduct created a substantial connection with the United States). "[S]o long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Mwani*, 417 F.3d at 11, quoting *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

Plaintiffs argue that Ayman Saleh was targeted for his conversion to Christianity, "which he did when he was a resident of the United States, [and] was the sole reason for his torture." Pls.' Opp. at 7. They also contend, without pointing to any supporting allegations in the complaint, that "it was his relations with the United States (the fact that his wife was a U.S. citizen) that ultimately led to his release." *Id.* at 6.

*Mwani v. bin Laden*, relied on by the plaintiffs, involved a terrorist attack outside of the American embassy in Nairobi, Kenya that killed over two hundred people, including twelve Americans, and wounded more than four thousand others. 417 F.3d at 4. The attack was allegedly orchestrated by defendants Osama bin Laden and al Qaeda. *Id.* The D.C. Circuit concluded there was jurisdiction in the United States against bin Laden and al Qaeda because the attack was purposefully directed at the nation itself. *Id.*

> [T]here is no doubt that the defendants engaged in unabashedly malignant actions directed at and felt in this forum. The plaintiffs' allegations and evidence were that bin Laden and al Qaeda orchestrated the bombing of the American embassy in Nairobi, not only to kill both American and Kenyan employees inside the building, but to cause pain and sow terror in the embassy's home country, the United States. Nor were the plaintiffs' allegations and evidence of contacts with the United States limited to the Nairobi bombing. The plaintiffs described an ongoing conspiracy to attack the United States, with overt acts occurring within this country's borders. Putting to one side the acts that took place after the embassy bombing (including the attacks on the World Trade Center and the Pentagon on

14

> September 11, 2001), the plaintiffs pointed to the 1993 World Trade Center bombing, as well as to the plot to bomb the United Nations, Federal Plaza, and the Lincoln and Holland Tunnels in New York.
>
> The plaintiffs thus amply made a prima facie showing that bin Laden and al Qaeda purposefully directed their activities at residents of the United States[.]

*Mwani*, 417 F.3d at 13 (emphasis added) (internal quotation marks, brackets, and citations omitted).

In this case, there was also an attack. But although the attack was brutal and entirely unacceptable, it was directed at an individual. It was neither intended to "cause pain and sow terror" in the United States, nor part of "an ongoing conspiracy to attack the United States." *Id.* In plaintiffs' words, "[t]he Defendants here targeted Mr. Saleh due to his religious identity which is directly in contravention to the rules of the UAE, of which he was a citizen at the time." Pls.' Opp. at 7.

Because the Individual Defendants did not purposefully direct their activities at residents of the forum, Federal Rule of Civil Procedure 4(k)(2) cannot establish personal jurisdiction in this case.

## IV.   Jurisdictional Discovery

Plaintiffs argue that in any event, the Court should not dismiss the case without jurisdictional discovery, which would allow them to supplement their jurisdictional allegations. Pls.' Opp. at 7. They contend that they "have already demonstrated plausible factual support that discovery will uncover 'sufficient evidence' of jurisdiction," although they do not point to any of the specific "factual support" they have already submitted. *Id.* Defendants oppose the request,

arguing that plaintiffs have not suggested that jurisdictional discovery could generate additional facts that would connect the attack to the U.S.  *See* Indiv. Defs.' Reply at 5.

"This Circuit's standard for permitting jurisdictional discovery is quite liberal," and such discovery is permissible even when plaintiffs have "not made out a prima facie case of jurisdiction." *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003); *see also FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008) (noting district courts' "broad discretion" to order jurisdictional discovery).  However, "[i]n order to engage in jurisdictional discovery, the plaintiff 'must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant.'  Such a request for jurisdictional discovery cannot be based on mere conjecture or speculation." *IFX Mkts.*, 529 F.3d at 1093–94, quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998); *see also Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11–12 (D.D.C. 2009) ("Jurisdictional discovery . . . is justified only if the plaintiff reasonably demonstrates that it can supplement its jurisdictional allegations through discovery.") (internal quotation marks and citations omitted).

Here, plaintiffs have not provided any reasons why jurisdictional discovery should go forward.  They have not identified any particular areas that could produce information sufficient to establish personal jurisdiction.  They also have not identified, in anything other than an entirely conclusory and speculative way, what relevant facts could come to light that could supply jurisdiction over these two defendants under the circumstances here.  Therefore, plaintiffs' request to conduct jurisdictional discovery is **DENIED.**

Since plaintiffs have failed to carry their burden to show that that the Individual Defendants are subject to the District of Columbia's long-arm statute, that they maintain sufficient contacts

with the District to render them subject to this Court's jurisdiction under the due process clause, or that they purposefully directed their conduct in this case towards the United States, the motion to dismiss is **GRANTED**, and Counts III, IV, V, VI, and VIII against the Individual Defendants are hereby dismissed.

Because all counts against the Individual Defendants are dismissed, the issue of whether to substitute defendant Mohammed bin Zayed Al Nahyan, *see* Notice of Substitution Concerning the Death of Defendant President Khalifa bin Zayed Al Nahyan and the Election of President Moham[m]ed bin Zayed Al Nahyan [Dkt. # 45], is **DENIED AS MOOT**.

**SO ORDERED**.


AMY BERMAN JACKSON
United States District Judge

DATE:  July 19, 2022

17